KNOLL, Judge.
The defendant, Joe E. Smithey, Jr., was charged with armed robbery in violation of LSA-R.S. 14:64. He entered a plea of guilty to the charge and was sentenced to serve ten years at hard labor in the custody of the Louisiana Department of Corrections without the benefit of parole, probation, or suspension of sentence. On appeal are four assignments of error: (1) in failing to inform the defendant of the elements of armed robbery during the Boykin Examination as required by the United States Supreme Court in Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) and the United States Court of Appeal for the Fifth Circuit in Burden v. Alabama, 584 F.2d 100 (5 Cir.1978); (2) accepting a guilty plea to the charge of armed robbery from a seventeen year old youth based on an inadequate Boykin Examination; (3) failing to follow the sentencing guidelines provided in LSA-C.Cr.P. Art. 894.1; and (4) imposing an excessive, cruel and unusual sentence.
FACTS
In January of 1983, the defendant, his younger brother and the adopted son of the victim conspired to rob Walter White, a sickly 70 year old man, at his home in the community of Lacamp, Vernon Parish, Louisiana. Their plans went afoul.
Several days later shortly after noon, the defendant, acting alone, put mascara on his face to give the appearance that he had a moustache, beard and sideburns. He then slipped a stocking over his head and put on a black knit cap. He was dressed in blue jeans and a blue jean jacket. He was also wearing a pair of gloves and tennis shoes. He went to Mr. White’s home and was in the process of breaking in when Mr. White heard a noise and went to the front door.
The defendant claims that when Mr. White opened the door it scared him, so he ordered Mr. White to “get on the floor” and hit him twice with his (the defendant’s) pistol. Mr. White claims he was beaten with a stick and received approximately five gashes to his head. The trial court commented that Mr. White was beaten so severely that the “club” broke in the process. The defendant took Mr. White’s wallet which contained $50.00 and ran out the back door. While beating Mr. White, blood had splattered on the defendant’s tennis shoes and gloves. The defendant returned to his home, hid the pistol, and burned the tennis shoes, gloves, stocking and wallet. He then went to a friend’s house for the purpose of establishing an alibi.
Mr. White received severe head wounds from the beating. He was hospitalized for nine days and was near death for the first twenty-four hours.
ASSIGNMENTS OF ERROR ONE AND TWO
In these assignments the defendant claims the Boykin Examination was inadequate, therefore, the defendant’s plea of guilty should be set aside.
The defendant alleges that the Boykin Examination was inadequate primarily in that the trial court failed to inform the *839 defendant of the elements of the crime of armed robbery. He also complains that the defendant’s statement, which was introduced during the Boykin Examination, was not shown to be freely and voluntarily given.
The minimum requirement for a guilty plea is that it be a voluntary act of the defendant. By doing so, the defendant admits past criminal conduct, consents to a conviction and waives grave constitutional rights. The due process clause of the fourteenth amendment of the United States Constitution requires that a guilty plea must be given by the defendant voluntarily and intelligently. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A waiver of the defendant’s constitutional right from a silent record will not be presumed. The record must show that the defendant, when entering his guilty plea, voluntarily and intelligently waived his constitutional rights. State ex rel. Jackson v. Henderson, 255 So.2d 85 (La.1971).
Before the trial court accepted the defendant’s guilty plea the trial court conducted a thorough examination with the defendant. The colloquy reflects that the defendant had an eleventh grade education and earned a high school equivalence diploma by passing the Graduate Equivalency Diploma examination. The trial judge explained that: he was entitled to a trial by jury or judge; he was presumed innocent until proven guilty beyond a reasonable doubt; it was the State’s burden to prove his guilt beyond a reasonable doubt; upon entering a plea of guilty, he waives a trial; he could subpoena witnesses and he would have the right to cross-examine any witnesses testifying against him; he had the right to remain silent; and that he did not have to give evidence against himself (compulsory self-incrimination). The trial judge specifically asked him if he understood that upon entering his guilty plea he was waiving all of the mentioned constitutional rights, which the defendant stated he understood.
The trial court asked the defendant if he was offering the plea because he felt he was guilty. The defendant stated he felt he was guilty. The trial court then read the bill of information to him and asked the defendant to explain to the trial court what occurred. The defendant stated:
“Well, I went to this man’s house with the intent not any harm to be done, and well, it was just — I know it ain’t right either way, but I was — it wasn’t to be anybody hurt during this, but while I was trying to break into his house, he come to the door while I was there and scared me and I just — I had tht — unfortunately, a pistol in my hand. I thought — I knew he had a gun in his house, and I thought that he had heard me trying to break in and he might shoot me, you know. It just happened all so fast, I didn’t have much time to think of anything.”
The trial court then questioned the defendant as to his intent, motive and method, all of which encompass the elements of armed robbery, which the defendant acknowledged and understood. LSA-R.S. 14:64 defines armed robbery as follows:

“A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.”

In this issue the defendant relies on Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), and Burden v. State of Alabama, 584 F.2d 100 (5 Cir.1978), which are distinguishable to the case at bar.
In the Henderson case, supra, the accused was retarded, 19 years of age and originally indicted for first degree murder. He pleaded guilty to second degree murder which required intent. Upon accepting the accused’s guilty plea, the trial court did not discuss with the accused the requisite intent nor was there anything in the record that *840 could serve as a substitute to show the requisite intent. The Supreme Court noted:
“... This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent. ...”
In the Burden case, supra, the defendant pleaded guilty to carnal knowledge. The accused had signed an “Ireland Form” which did not contain a recital of the elements of carnal knowledge, or any representation made by the judge or defense counsel concerning the information. Further, the record of the proceedings contained no reference to the elements of the crime.
It is our view that the United States Supreme Court did not intend for the trial court to review with the accused a ritualistic litany of the elements of the crime for which he is charged. The elements requirement is met if the charge is explained to the accused. This interpretation is consistent with the Henderson case, supra, which states as follows:
[[Image here]]

“Petitioner argues that affirmance of the Court of Appeals will invite countless collateral attacks on judgments entered on pleas of guilty, since frequently the record will not contain a complete enumeration of the elements of the offense to which an accused person pleads guilty. We think petitioner’s fears are exaggerated.

Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit....”
The Louisiana Supreme Court has also adopted the same view. State v. Bowick, 403 So.2d 673 (La.1981). In accord see State v. Thomas, 434 So.2d 530 (La.App. 2 Cir.1983).
We find the trial court’s Boykin Examination of the defendant included the elements of the crime of armed robbery.
ASSIGNMENTS OF ERROR THREE AND FOUR
In these assignments the defendant complains that the sentencing court did not comply with LSA-C.Cr.P. Art. 894.1 and that the sentence is excessive.
Louisiana Constitutional Article I, § 20 prohibits the imposition by law of excessive punishment. It is judicially recognized that a sentence, although within the statutory limit, may violate a defendant’s constitutional rights against excessive punishment which is enforceable on appellate review. Compliance with C.Cr.P. Art. 894.1 is an important aid to the appellate courts in reviewing a sentence complained of as excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing court is given wide discretion in the imposition of sentences within statutory limits and the sentence should not be set aside as excessive absent manifest abuse of the sentencing court’s discretion. For a sentence to be excessive, the penalty imposed must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980).
Our review of the record of the present case convinces us that the sentence imposed is not excessive and that the sentencing court complied with the guidelines of Art. 894.1. The defendant’s actions were calculating and violent. He attacked a sick, defenseless and elderly man in the sanctity of his home to rob him of his wallet. The defendant administered a severe beating on Mr. White with a weapon, beating him almost to the point of death. The defendant had known the old man for years, ate at his house and was friends with his adopted son. The defendant spent the money with his *841 younger brother on cigarettes and other inconsequential items.
The sentencing court ordered a presen-tencing investigation which reflected that the defendant had been either expelled or suspended from school for misconduct, fighting, damaging school property, leaving the school without permission, possession of alcohol (which the defendant denied) on school grounds and other matters. He was involved in other serious offenses (the record does not reflect the nature of those offenses) but he had not been convicted of any.
The sentencing court commented that it had reviewed the sentencing guidelines of Art. 894.1 and we find it gave a full factual basis for the sentencing choice. The sentencing court offered the defendant a sentencing hearing which the defendant declined and in lieu thereof offered three letters of character reference, and a letter written by the defendant to the junior high school class cautioning them to continue their education and avoid wrong doing. The sentencing court commented it had read the letters and was taking into consideration the youthful age of the defendant and that he was technically a first offender. The court felt that had the defendant been older, the defendant’s sentence would have been longer than the sentencing choice.
We do not find that the sentencing court abused its wide discretion in its sentencing choice. In defendant’s complaint of exces-siveness of sentence, he strongly urges his youthfulness. We observe, however, that a sick and elderly person is only victim of prey to a youth bent on violent criminal conduct. The armed robbery of Mr. White was senseless and cruel. The penalty imposed is not so disproportionate to the crime committed as to shock our sense of justice.
We therefore conclude that these assignments of error are without merit.
DECREE
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.