513 So.2d 419 (1987)
STATE of Louisiana, Appellee,
v.
John GRAHAM, Appellant.
No. 18851-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
Minard & Mixon by James E. Mixon, Columbia, for appellant.
*420 William Guste, Jr., Atty. Gen., Baton Rouge, Don C. Burns, Dist. Atty., Iley H. Evans, Asst. Dist. Atty., Columbia, for appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
After entering an uncounseled plea to indecent behavior with a juvenile (his 15-year-old daughter) and being sentenced to five years at hard labor, the defendant in this appeal, with counsel, seeks, among other relief, to have his plea set aside.
This record contains no evidence that defendant knowingly, and with an understanding of the law in relation to the facts of the crime, waived counsel as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Dickson, 505 So.2d 758 (La.App. 2d Cir.1987). See also McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).
Because of this deficiency and other related record deficiencies which we shall also discuss, we reverse the conviction, set aside the guilty plea, and remand to allow the prosecution to proceed according to law.

WAIVER OF RIGHT TO COUNSEL
The right to assistance of counsel is a fundamental constitutional guarantee to a citizen who is charged with a crime. LSA-Const. Art. 1, § 13. A knowing and intelligent waiver of this right is necessary before any uncounseled person may be imprisoned for an offense. See State v. Dickson, supra, and cases cited therein.
The right to assistance of counsel seeks to insure that a defendant who is embroiled with the State in our adversary system of justice, and is probably untrained in the law, may utilize every advantage which the law grants him. State v. Bodley, 394 So.2d 584 (La.1981).
Although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, supra.
In Faretta, the record affirmatively showed that the defendant was literate, competent, and understanding, and that he was voluntarily exercising his informed free will when he chose to represent himself. In contrast, the defendant's waiver of counsel was found ineffective in State v. Bell, 381 So.2d 393 (La.1980), because the record did not reflect that the trial judge attempted to assess the defendant's literacy, competency, understanding, and volition.
The trial court informed defendant of his right to counsel and to appointed counsel if he could not afford to hire a lawyer. The court's only explanation of the dangers and disadvantages of self representation ("[I]t's normally better to have a lawyer represent you[.]") is woefully deficient[1] and does not indicate any assessment *421 of defendant's literacy, competence, or understanding of the consequences of self-representation. Defendant's apparent willingness to proceed without a lawyer under these circumstances, cannot be construed as the exercise of an informed free will. State v. Bell, supra.
The fact that defendant had been employed as a radio dispatcher by the Caldwell Parish Sheriff's Office does not appear in the record of the guilty plea colloquy but is asserted in the State's brief. This fact of itself, does not indicate that defendant understood the nature of the charge or consequences of self-representation. A trial judge's personal knowledge about a defendant may compel a reasonable belief that defendant knew and understood the consequences of his action. Such personal knowledge, as we have assumed, does not, however, satisfy the Faretta requirement that there be a reviewable basis in the record to support the conclusion that the defendant knowingly and intelligently waived his right to counsel. City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981).
This deficiency, when coupled as well with the omission in this record of defendant being informed of the substance and factual basis of the charge and the range of sentencing, as hereafter discussed, compels us to find that defendant's guilty plea is constitutionally infirm.
Unless defendant competently waives counsel on remand, he is entitled to the assistance of counsel at every critical stage of the proceedings, including sentencing. See and compare State v. Williams, 374 So.2d 1215 (La.1979); State v. Carpenter, 390 So.2d 1296 (La.1980).

OTHER REQUIREMENTS FOR GUILTY PLEA
A guilty plea, in law equivalent to an admission of all the elements of a formal criminal charge, cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. McCarthy v. United States, supra.
Various safeguards have been designed to assure that a guilty plea represents and accurately acknowledges guilt and is entered into with as full and complete an awareness of the risks, options, consequences, and possible benefits as is feasible. These safeguards also assure finality for a guilty plea, which, legally, is a conviction. The accused is entitled to have a lawyer represent him and advise him competently, as well as to have the judge determine on the record that he understands the basic constitutional rights he is giving up and the possible sentence to be imposed. State ex rel. Turner v. Maggio, 463 So.2d 1304 (La.1985).
Among the constitutional rights a defendant must competently waive on the record when he pleads guilty are the right against self-incrimination, the right to trial by jury, and the right to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).
For the purpose of review, also a constitutional guarantee, the record must contain an affirmative showing that demonstrates defendant's understanding and the voluntary nature of the plea. While an understanding of the Boykin triad of rights may be the sine qua non for the acceptance of a guilty plea, the mere recitation of those rights does not always insure the intelligent and voluntary nature of the plea. Other factors may have a bearing on the validity of the plea. State v. Halsell, 403 So.2d 688 (La.1981).
A trial court's on-the-record examination, especially of an uncounseled defendant, should include an attempt to satisfy itself that the defendant understands the nature of the charge, the acts sufficient to constitute the offense with which he is charged, and the statutorily permissible *422 range of sentence. Boykin v. Alabama, supra, footnote 7; State ex rel. Turner v. Maggio, supra; State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982).
A guilty plea may be involuntary either because the record does not show the accused understands the nature of the constitutional protection he is waiving, or the accused has an incomplete understanding of the charge. Under such circumstances the plea cannot stand as an intelligent admission of guilt. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).
Although the trial court is not required to review with the accused a "ritualistic litany" of the elements of the offense, it is required to explain the substance of the charge to him. State v. Smithey, 441 So.2d 837 (La.App. 3d Cir.1983); Henderson v. Morgan, supra.
When the State informed the court that defendant was charged with indecent behavior with a juvenile, the court asked defendant if he understood the charge. Defendant replied, "Yes sir." When the court asked him if he felt he was guilty of this charge, he replied, "Uh, yes sir, I guess so." Even after this equivocal response, the factual basis for the plea was not described and the State referred the court to a proceeding in juvenile court, over which the same trial judge presided and at which defendant was neither present nor represented. In that juvenile proceeding, a DHHR worker gave a narrative report of her investigation into defendant's relationship with his daughter. Defendant was represented at a later juvenile court hearing in which no testimony was given and in which all parties stipulated that defendant's daughter would remain in foster care. Transcripts of the juvenile court hearings were placed in this record after this court requested the transcripts be lodged here.
The State contends that the factual basis for defendant's guilty plea was omitted from the record at defendant's request. There is nothing in the record of the guilty plea colloquy to support this "waiver," and we cannot consider the effect of defendant's alleged "request."
The State also contends defendant was informed of the nature and factual basis of the offense at a private conference with the district attorney about two months before the formal charge against defendant was instituted. Again, we cannot consider the effect of this conference which is not mentioned by the State or acknowledged by defendant in the record of the guilty plea colloquy.
The due process clause of the U.S. Constitution does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a guilty plea unless the judge is put on notice that there may be some need for such an inquiry, for example, when the accused asserts his innocence. Banks v. McGougan, 717 F.2d 186 (5th Cir.1983). Fundamental fairness and due process, as well as the constitutional duty to inform a defendant of the nature of the charge requires the trial court to ascertain on the record whether an uncounseled defendant knows the maximum penalty which could be imposed under a guilty plea. Wade v. Wainwright, 420 F.2d 898 (5th Cir.1969); State ex rel. LaFleur v. Donnelly, supra. In Donnelly, these observations were made:
It is important to explain to the accused the elements of the offenses with which he is charged and the rights he is waiving by pleading guilty thereto. However, it is probably much more important to the defendant's decision (about whether to plead guilty) that he understand the maximum penalty exposure.

In this case a detailed account of the possible sentences by the trial court could have prevented any misunderstanding with regard to parole eligibility on the firearms charge. A full explanation of the sentence provided for an offense by the legislature seems particularly important when, as part of the penalty for the offense, parole eligibility is denied, because the accused may be far more concerned about the possibilities for early release than any abstract right to confront his accusers at trial. (Our emphasis; citations omitted.) 416 So.2d at 84.
*423 Because the sentencing exposure for the offense to which a defendant pleads guilty is a direct, rather than collateral, consequence of the plea, a defendant should be informed of the exposure before the plea is accepted. See and compare State v. Myers, 503 So.2d 1085 (La.App. 2d Cir.1987); State ex rel. LaFleur v. Donnelly, supra. In this sense, the exposure is an inherent part of the constitutional nature of the offense. LSA-Const. Art. 1, § 13.
Here, there is no on-the-record notice to this uncounseled defendant about the range of sentencing he might face after pleading guilty. Defendant pleaded on the same day the charge against him was filed. Any notice defendant may have been given in a conference with the district attorney is not in reviewable form. On this record, we also must find that defendant was not adequately informed of the consequences of his guilty plea. These circumstances render the guilty plea by an uncounseled defendant not knowingly and voluntarily entered.

CONFLICT OF INTEREST
This record shows that defendant's appointed lawyer on appeal represented defendant's daughter in the juvenile court hearing. The daughter was placed in foster care because of defendant's conduct which serves as the basis for the charge against him. We also note that defendant's appellate counsel has rendered commendable service for defendant.
Because of the evident possibility on remand for a new trial that a conflict of interest may adversely affect the guarantee of competent counsel, we direct the trial court to inquire, on the record, and counsel to inquire off the record, whether defendant understands and is willing to accept the risks associated with counsel's potentially conflicting loyalties. See State v. Freeman, 409 So.2d 581 (La.1982), U.S. cert. denied, 459 U.S. 845, 103 S.Ct. 100, 74 L.Ed.2d 90; State v. Serpas, 485 So.2d 999 (La.App. 4th Cir.1986). If defendant does not accept, and is unable to hire private counsel, the trial court must appoint other counsel (unless defendant competently chooses to represent himself). State v. Marshall, 414 So.2d 684 (La.1982), U.S. cert. denied, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617.

SENTENCING
In the present posture of this case we do not review defendant's claim that the five-year maximum sentence for this offense is excessive. We shall address some of his other assignments of error related to sentencing.
In defendant's statement in the PSI, he denies his daughter's allegations and states he pled guilty because he "didn't have no defense except [his] word." The PSI also mentions that during the course of the DA's investigation, defendant took a psychological stress evaluation test (PSE), the result of which indicated that defendant was lying when he denied sexually abusing his daughter.
Defendant contends that he and the district attorney orally agreed that the PSE results would not be considered as a sentencing factor. In its brief, the State concedes the agreement, but states (incorrectly) that the record does not reflect that the trial court placed any reliance on the test results as a sentencing factor:
The State, through the District Attorney's Office, and the defendant were in agreement that the defendant would submit to a PSE Examination. The sole usage and purpose of this PSE was to determine whether or not the District Attorney's Office would proceed forward with the filing of bills of information. Based upon the PSE Examination, the defendant decided to plead guilty to the lesser charge of indecent behavior with a juvenile. Nowhere in the sentencing transcript is there any indication that the results of the PSE Examination are the basis of the sentence imposed. (Our emphasis.)
We cannot agree with the State's contention because the sentencing judge clearly stated:
In handing down this sentence, I have noted the presentence investigation that *424 indicates that there is little or no doubt that the victim of this crime is telling the truth and that you are in fact guilty of this charge. This was further corroborated by the results of a PSE test. (Our emphasis.)
The State's brief, prepared and signed by an assistant district attorney, binds the State to the admission that the agreement limited the use of the PSE results. State v. Tanner, 425 So.2d 760 (La.1983). In light of this admission, and because of the sentencing judge's comments about the PSE, defendant is entitled to have another judge preside over future proceedings, at which the agreement shall be honored and the PSE test results shall not be mentioned or disclosed. See and compare State v. Bentley, 499 So.2d 581 (La.App. 2d Cir.1986), writ denied, 503 So.2d 477; State v. Hayes, 423 So.2d 1111 (La.1982); State v. Thompson, 381 So.2d 823 (La.1980).
Although polygraph evidence is inadmissible during a criminal trial at which guilt or innocence is determined, the trial court may, in its discretion, consider such evidence in post-trial proceedings, such as a motion for new trial. State v. Catanese, 368 So.2d 975 (La.1979); State v. Humphrey, 445 So.2d 1155 (La.1984).
In State v. Thompson, supra, fn. 1, the court observed that PSE tests operate on similar, but not identical, principles involved in polygraph tests, and that Catanese is authority for holding PSE tests inadmissible at trial since they may be less reliable than polygraph tests.
We also consider State v. Washington, 414 So.2d 313 (La.1982). There it was held that the sources of information from which a sentencing court may draw are extensive and that the traditional rules of evidence do not bar the consideration of otherwise relevant information. These holdings indicate that PSE test results would ordinarily be admissible at sentencing. The test results are not admissible here for the reasons we have stated.

OTHER RECORD DEFICIENCIES
The sentencing judge commented to defendant that "this charge was reduced from Molestation of a Juvenile for which you could've been ... imprisoned for 15 years." Outside of this mention and the State's contentions in its brief, the record does not indicate that defendant was charged with the greater crime of molestation before being charged with indecent behavior. The only bill of information in the record charges indecent behavior. The State contends defendant was told he would be charged with molestation in a conference with the DA and that the lesser charge of indecent behavior was filed as part of a plea bargain agreement. We cannot consider the effect of the private conference for the reasons we have stated.
A defendant's reduction in sentencing exposure through plea bargaining is a valid consideration in sentencing if the lesser offense does not adequately describe the defendant's conduct. State v. Lanclos, 419 So.2d 475 (La.1982). However, in Lanclos the record showed that defendant was formally charged with a greater offense than the one to which he bargained to plead guilty.
On remand, the State may offer competent evidence of any plea bargain made with defendant if defendant again pleads guilty. The State must prove, however, that any lesser charge was filed in lieu of a greater charge as part of an off-the-record plea bargain.

DECREE
Because of the record deficiencies surrounding defendant's guilty plea, we reverse defendant's conviction, vacate his sentence, and remand for further proceedings to be conducted in accordance with law and with this opinion.
REVERSED AND REMANDED.
NOTES
[1] On August 5, 1986, defendant was charged with indecent behavior with a juvenile and appeared for arraignment without a lawyer. The court informed him of his right to a lawyer and to an appointed lawyer if he could not afford to hire one, and told him he could waive counsel for arraignment only and reserve his right to a lawyer at further stages of the proceedings. Defendant responded that he wished to go ahead and plead guilty at that time.

The court then told defendant:
All right, before we proceed further, let me make sure I understand your wishes concerning an attorney, it's normally better to have a lawyer represent you, as I stated earlier, you can have a lawyer appointed if you cannot afford one, if you can afford one, you can hire the attorney of your choice to represent you, do you understand that?
DEFENDANT: Uh huh.
THE COURT: Do you still wish to waive counsel, give up a lawyer and proceed to a guilty plea and not have a lawyer?
DEFENDANT: Yes sir.
THE COURT: All right, let the record reflect that he is waiving counsel and pleading guilty. * * *
The court explained to defendant that by pleading guilty he was giving up his right against self-incrimination, his right to cross-examine and compel the attendance of witnesses, and his right to a jury trial. Defendant stated that no threats or promises were made to coerce or entice him to plead guilty. When asked if he felt he was guilty of the charge, defendant responded, "Uh, yes sir, I guess so." The State informed the court that the factual basis for the plea was disclosed at a hearing in juvenile court, and the court ordered it to be incorporated by reference. The court then accepted the guilty plea, finding that it was made voluntarily, knowingly and intelligently.