GOTHARD, Justice.
The defendant, Kenneth M. Oubre, pled guilty in the 23rd Judicial District Court to a charge of three counts of indecent behavior with a juvenile in violation of LSA-R.S. 14:81. He appeals his sentence as excessive. On July 28,1986 Oubre was arrested on charges of oral sexual battery, carnal knowledge of a juvenile, and molestation of a juvenile. After an arraignment set for August 18 was continued, on December 9, 1986 a bill of information was filed, charging the defendant with three counts of indecent behavior (masturbating in the presence of a juvenile) with three separate juveniles. On that day he was arraigned and pled guilty as charged pursuant to a plea bargain.
The court ordered a pre-sentence investigation. On June 29, 1987 the court heard the defendant’s motion to traverse the pre-sentence report and ordered that the report be supplemented. On August 17, 1987 the defendant was sentenced to serve two years at hard labor and to pay a fine of $500.00 and court costs for each of the three counts. The sentences were to run consecutively with the stipulation that a default in payment of the fines would result in an additional six months’ imprisonment on each count, also concurrent.

Assignment of Error

The trial court erred by imposing an excessive sentence.[1]

Facts:

The defendant was at the time of his arrest unmarried, thirty-two years old, a deputy sheriff and a Boy Scout leader with no previous criminal record. In 1984 he *223 had received the Louisiana Jaycees “law officer of the year” award. In July, 1986 a twelve year old boy reported to his parents that from about January, 1986 until June the defendant performed oral sex on him and persuaded the boy to perform oral sex upon the defendant. The incidents took place at least three times a week when the boy and his brother visited the defendant’s trailer to lift weights. He reported that at Boy Scout camp in the week of June 15-21, the defendant took him to a wooded area or the bathroom each night for oral sex. He instructed the victim not to tell his parents. Upon hearing their son’s account, the parents called the police and the defendant was arrested. The defendant's involvement with two other boys was discovered in further investigation and the defendant was then charged by bill of information with three counts of indecent behavior with a juvenile.

Assignment of Error Discussion

The defendant’s position is that his sentence is excessive in that it orders incarceration when the record supported a suspended sentence. He bases his argument on the pre-sentence investigation and the plea bargain.
The law regarding the safeguards against overly severe punishment in violation of a defendant’s constitutional rights were summarized by this court in State v. Piazza, 496 So.2d 1229, 1230 (La.App. 5th Cir.1986), a case dealing with indecent behavior with juveniles, as follows:
Article 1, Section 20 of the Louisiana Constitution of 1974 states in pertinent part that “no law shall subject any person ... to cruel, excessive, or unusual punishment ...” A sentence is excessive if it is grossly out of proportion to the severity of the crime or it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Howard, 414 So.2d 1210 (La.1982); State v. Smith, 407 So.2d 652 (La.1981); State v. Allen, 451 So.2d 618 (La.App. 5th Cir.1984).
The penal sanction for each violation of La.R.S. 14:81 is a term of imprisonment not to exceed five years with or without hard labor and/or a fine of not more than five thousand dollars. Accordingly, the term of imprisonment imposed upon the defendant is within the statutory range. Nevertheless, in State v. Sepulvado, 359 So.2d 137, (La.1978), same case, 367 So.2d 762, 767 (La.1979), the court expressly stated that “the imposition of a sentence although within the statutory limits may violate a defendant’s constitutional right against excessive punishment that is enforceable ... on appellate review of his conviction.” Thus, a sentence may be reviewed for excessiveness though it is within the prescribed statutory range. State v. Nealy, 450 So.2d 634 (La.1984); ... [Other citations omitted.]
La.C.Cr.P. art. 894.1[2] sets out guidelines to be considered by the court when imposing *224 sentence, so that the sentence will be appropriate for the particular defendant and the particular circumstances of the case. Once the court has complied with article 894.1, the sentence will not be set aside as excessive unless there is a manifest abuse of discretion and the penalty is grossly out of proportion to the severity of the crime and a needless infliction of pain and suffering. State v. Willis, 420 So.2d 962 (La.1982).
In sentencing Oubre, the trial judge handed down Reasons for Sentence, seven pages in length, articulating his evaluation of the defendant and the offenses in terms of the statutory guidelines and indicating that he had carefully weighed all the evidence before him. While acknowledging the mitigating factors in Oubre’s background and the recommendation of leniency from certain members of the community, he stated his primary reasons for deciding on incarceration as follows:
The Court believes that there is an undue risk that during the period of a suspended sentence or probation this defendant would commit another crime; that he is in need of correctional treatment or a custodial environment which can be provided most effectively by his commitment to an institution and that any lesser sentence than the one to be imposed herein would deprecate the very serious nature of these offenses.
Aside from the very serious nature of the crimes perpetrated by this defendant upon these unsuspecting children, is the fact that, the defendant exploited his position as a member of the St. James Parish Sheriffs Law Enforcement Community and as a Boy Scout Troup Leader to entice these young men into sexual activities. Obviously, the scarring effect of the defendant’s actions upon the victims and upon this community are of monumental proportions. It is quite possible that the lives of some of these victims may never be the same because of the defendant’s actions.
In addition to the seriousness of the offense, one of the more disturbing aspects of this case is that this defendant is classified as a pedophile....
The defendant complains that the court used only the negative information instead of the positive. In Dr. Edward H. Schwery’s letter to the probation investigator, included in the pre-sentence report, Schwery stated that he believed Oubre to be a fixated pedophile, with an ingrained pattern of abnormal sexual attraction to children. Such persons, he said, are rarely cured, although through therapy some may be able to control their behavior. It was his opinion that Oubre had probably a longer history of deviant behavior than he had admitted to and that if Oubre made no further disclosures he would be pessimistic about Oubre’s treatability and the likelihood of future recurrences. Dr. Schwery made no definitive recommendations as to sentencing. As to victim impact, Dr. Schwery pointed out that he had treated children who had been abused by persons who were professionals (priests, teachers, etc.), and found that the long-term impact upon those children was worse than on those whose abusers were not in positions of authority.
The report of Dr. Stephen Southern, who holds a doctorate in education and who specializes in counseling on sexual problems, was also part of the pre-sentence report and his conclusions were diametri *225 cally opposed to Dr. Schwery’s. He had been seeing Oubre every other week after Oubre’s initial inpatient treatment at Jo Ellen Smith Hospital and had revised his initial diagnosis of a borderline personality disorder and fixated pedophilia. He had administered a test that indicated Oubre is now taking an interest in women and stated that he felt remorse for the effects of his behavior upon the boys. Dr. Southern believed that the victims of the three offenses for which Oubre was charged were his only victims and that such incidents were unlikely to happen again. Dr. Southern felt that Oubre was motivated and able to benefit from therapy. If he was imprisoned and without treatment his problems were likely to intensify. The trial court may accept or reject an opinion expressed by a medical expert. Kramer v. Johns-Manville Sales Corp., 459 So.2d 642 (La.App. 5th Cir.1984)
The defendant argues that only the victims and their families of the three victims suggested incarceration, and that all others who filed documents in the court or commented to the court recommended probation and therapy. He stated in brief that, “The District Attorney’s Office agreed it would not recommend incarceration”. The state’s brief indicates that the District Attorney’s Office agreed not to make any recommendation regarding sentencing. He stated further that the probation agent who prepared the pre-sentence report, had told Oubre and his attorney in a meeting that he would recommend a suspended sentence; however, the state’s brief denies the agent’s having ever made such a statement to the defendant or the court. Instead, the agent recommended a three-year sentence with the Department of Corrections in the first report and made no recommendations on sentencing in the second report, as he was no longer attached to the Department.
Contrary to the judge’s statment in his reason for sentence that the defendant’s conduct caused and threatened serious harm to the victims as well as the community as a whole, the defendant asserts that there was never a threat of physical harm nor any actual physical harm. The damage was clearly not physical and there is no indication that the court intended such an interpretation. The harm to the victims was psychological, as described by Dr. William Janzen, a psychologist who was treating M., the twelve-year old boy who reported the abuse, and his fourteen-year-old brother, L., who had been abused by the defendant in 1985 and early 1986. The parents of the victims reported feeling betrayed, and it is likely that other members of the community felt that for the offenses to have been committed by a sheriff's deputy constituted an abuse of public trust in the law enforcement agency. See State v. Moore, 419 So.2d 963, 968 (La.1982).
Our review of the jurisprudence indicates that other courts have upheld sentences of incarceration for periods exceeding two years, where a defendant pled guilty to indecent behavior with a juvenile. See State v. Coleman, 490 So.2d 705 (La.App. 2 Cir.1986), writ denied, 496 So.2d 1037 (La.1986); State v. Sanderson, 488 So.2d 1120 (La.App. 2 Cir.1986), writ denied, 494 So.2d 326 (1986); State v. Domangue, 476 So.2d 986 (La.App. 1 Cir.1985). We note also that the sentences ran consecutively in the cases of State v. Piazza, supra; State v. Domangue, supra; State v. Coleman, supra.
The defendant argues also that the plea bargain should have called for a suspended sentence. While the defendant was arrested on 87 counts of oral sexual battery, carnal knowledge of a juvenile, and molestation of a juvenile, arraignment on those charges set for September 15, 1986 was continued on the motion of the district attorney. Thereafter, apparently a plea bargain was agreed upon, and a bill of information was filed charging the defendant only with three counts of indecent behavior with a juvenile and on the same day the defendant was arraigned and pled guilty. In the examination the court asked specific questions as to the defendant’s understanding of his sentencing exposure, as follows:
The Court: Do you think you understand that crime, the definition of it, the elements of it?
*226 A. Yes.
The Court: It goes on to say that, “Whoever commits the crime of indecent behavior with juveniles shall be fined not more than $5,000 or imprisoned with or without hard labor for not more than seven years or both. So, that you have plead (sic) guilty to three counts of that crime, which means that your possible exposure could be fines of up to $15,000 or imprisonment of up to 21 years or both. Do you understand that?
A. Yes.
The Court: And I understand further that there has been no assurances to you as to any sentences. The Court will receive your plea today and will defer sentence and order a pre-sen-tence investigation report and after the Court has received this report and considered all of the information in the report and any other relevant informtion which you may want to present to the Court, then your sentencing will be scheduled and you will, at that time, be sentenced. Do you understand that?
A. Yes sir.
The Court: Now, you understand, again, that there are no promises by the Court to you that there will be any sentence other than what you may receive from the Court and that that could be anything from no time in jail up to 21 years including a possible fine of $15,000. Do you understand that?
A. Yes.
As the defendant was represented by counsel and replied that he fully understood his exposure, we see no applicability of State v. Graham, 513 So.2d 419 (La.App. 2nd Cir.1987), relied upon in appellant’s supplemental brief, and find no merit in his argument.
In summary, we find no error in the trial court’s sentence and affirm.
SENTENCE AFFIRMED.

. The defendant failed to file any formal assignments of error, but his counsel argued exces-siveness of sentence in his brief. As the applicable statute, La.C.Cr.P. art. 844(C) does not authorize the reviewing court to disregard an assignment presented in brief only, we consider the defendant’s argument as if he had filed a formal assignment.

. Art. 894.1. Sentence guidelines; generally
A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant’s crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1)The defendant’s criminal conduct neither caused nor threatened serious harm.
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm.
(3) The defendant acted under strong provocation.
(4) There was substantial grounds tending to excuse or justify the defendant’s criminal conduct, though failing to establish a defense.
(5) The victim of the defendant’s criminal conduct induced or facilitated its commission.
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained.
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime.
(8) The defendant’s criminal conduct was the result of circumstances unlikely to recur.
*224 (9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.
(10) The defendant is particularly likely to respond affirmatively to probationary treatment.
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
(12) The defendant’s voluntary participation in a pre-trial drug testing program.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.
D. When a defendant has been convicted of a misdemeanor and the court has imposed a sentence of imprisonment, the sentencing court may order the defendant to report to the sheriff for participation in a court-approved workday release program during the term of imprisonment as provided by law. Added by Acts 1977, No. 635, § 1. Amended by Acts 1986, No. 704, § 1; Acts 1987, No. 500, § 1.