It GASKINS, J.
The defendant, Jeremiah Ethan Hall, was originally indicted on a charge of first degree murder in the shotgun slaying of Paul Lucas Adams during a robbery. Shortly before the defendant was scheduled to be tried on a lesser charge of second degree murder, he pled guilty to a responsive charge of manslaughter and to a new bill of information for armed robbery. The guilty pleas were pursuant to an agreement whereby he would receive agreed sentences of 40 years at hard labor for manslaughter and 50 years without benefit of probation, parole or suspension of sentence for armed robbery, with the sentences to be imposed concurrently. Before sentencing, the defendant moved to withdraw his guilty pleas. Following an evidentiary hearing, the trial court denied the motion and sentenced the defendant in accordance with the terms of the plea agreement. The defendant appealed. For the reasons set forth below, we affirm.
FACTS
On the morning of December 14, 1997, the body of 18-year-old Paul Lucas Adams was found at a boat launch area at the Corney Creek Bridge on Hwy. 167, north of Bernice, Louisiana. He had been killed by a “near” shotgun wound to the head. The front pocket of his trousers had been turned inside out.[1] Tragically, the first police officer to arrive at the crime scene was Chief Minor Patton of the Bernice Police Department, the victim’s stepfather.
During the police investigation, it was discovered that on the morning of December 13, the defendant had obtained some shotgun shells of the Rsame brand used to kill the victim; that the defendant had been seen with the victim on the night of December 13; and that the tires of the defendant’s truck appeared to match tire tracks found at the murder site. When questioned, the 17-year-old defendant made a statement to the Union Parish Sheriffs office, under oath, in which he *923 identified Ronnie Smith as the person who had killed the victim. He claimed that he loaned his shotgun to Smith earlier in the day to shoot bottles. His initial story was that he had not been involved, but had simply come on the scene to find the victim dead and then had given Smith a ride away from the scene. The defendant drew a picture of the crime scene and explained it to the interrogating officer.
After he was confronted with the fact that his picture and explanation did not square with the crime scene, the defendant made another statement. His subsequent confession was that he and Smith had planned the robbery of the victim, but had only intended to knock him out with a metal club and take his money. According to the defendant, Smith used the defendant’s shotgun to shoot the victim once in the head. Smith ejected the shotgun shell hull from the gun, and shot the victim again when he was on the ground, killing him. Smith allegedly then retrieved the ejected hull, took the victim’s money, and entered the defendant’s truck. He ejected the second hull in the vehicle. Smith then gave the defendant $100, which the defendant later gave to his father to make a truck payment.
Following his statement on December 17, 1997, the defendant was arrested for first degree murder and conspiracy to commit armed robbery. In February 1998, he was indicted for first degree murder. In May 1999, the Instate gave notice of intent to seek the death penalty. However, in June 1999, the state decided to reduce the charge to second degree murder.
On July 8, 1999, the defendant, then age 18, accepted a plea bargain. As to the indictment of first degree murder, he pled guilty to a responsive charge of manslaughter. Additionally, the state filed a new bill of information charging the defendant with armed robbery; the defendant entered a plea of guilty to that charge as well. The plea agreement also provided for agreed upon, concurrent sentences of 40 years at hard labor on the manslaughter charge and 50 years at hard labor without benefit of parole, probation or suspension of sentence on the armed robbery charge. As part of the agreement, the defendant agreed to cooperate with the authorities in the investigation or prosecution of other individuals culpable for the victim’s death.
Subsequent to the plea but prior to sentencing, the defendant changed counsel. New counsel filed a motion to withdraw the defendant’s guilty pleas. A hearing on the motion was held on June 28, 2000. Testimony was given by the defendant and his parents as to their dissatisfaction with his prior counsel and the plea bargain. The former counsel also testified. At the conclusion of the hearing, the trial court denied the motion to withdraw and sentenced the defendant in compliance with the plea agreement.
The defendant appeals from the trial court’s refusal to allow him to withdraw his guilty pleas. His 13 assignments of error are essentially the same grounds set forth in his motion to withdraw.
| .DEFINITIONS
In his first five assignments of error, the defendant contends that the trial court erred in defining underlying crimes during his Boykin colloquy. Consequently, he claims that he is entitled to withdraw his guilty pleas. These assignments are, at best, specious and meritless.
The defendant pled guilty to manslaughter. In relevant part, La. R.S. 14:31(A)(2) defines manslaughter as:
*924 (2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 80 or 30.1, or of any intentional misdemeanor directly affecting the person; or
As quoted above, La. R.S. 14:31(A)(2)(a) refers to “any felony not enumerated in Article 30 or 30.1.” The felonies enumerated in La. R.S. 14:30, the first degree murder statute, and in La. R.S. 14:30.1, the second degree murder statute, are: the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, drive-by shooting, first degree robbery, or simple robbery.
A guilty plea may be involuntary when the record shows that the defendant has an incomplete understanding of the charge against him. When this is true, the plea cannot stand as an intelligent admission of guilt. State v. Graham, 513 So.2d 419 (La.App. 2d Cir.1987); Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). However, while the trial court is not required to review with the accused a “ritualistic Llitany” of the elements of the offense, it is required to explain the substance of the charge to him. State v. Graham, 513 So.2d at 422.

Rape/Forcible rape

When advising the defendant of the provisions of the manslaughter statute under which he was pleading guilty, the trial court quoted from La. R.S. 14:31(A)(2). As part of the recitation, the court made reference to felonies not enumerated in La. R.S. 14:30 or 30.1. In so doing, the court listed the enumerated felonies and inadvertently included “rape” but excluded “forcible rape.” Inasmuch as the present case in no way involves a sexual assault or an attempt thereof, these highly technical errors could not have—in any possible way—affected the defendant’s understanding of the charge against him or undermined the voluntariness of his plea. Consequently, we find these two assignments lacking in any merit.

Unenumerated felonies/intentional misdemeanor/Simple or second degree battery

The defendant then argues that the trial court gave an incorrect definition of manslaughter under La. R.S. 14:31(A)(2) because it did not identify or define “any felony not enumerated in Article 30 or 30.1,” “any intentional misdemeanor directly affecting the person,” simple battery, or second degree battery.
The basis of the manslaughter charge was that the defendant was a principal to a homicide committed without any intent to cause death or great bodily harm, and that the defendant was engaged in the perpetration or attempted perpetration of any non-enumerated felony or any intentional misdemeanor directly affecting the person. At the defendant’s guilty plea, | fithe prosecutor stated the facts of the offenses as follows: “The scheme was to lure Mr. Adams north of Bernice to the Corney Creek Bridge ... and at that point to hit him in the head or knock him out and to rob him of his money. Thus to commit a simple battery, or second degree battery on him and take his money. Instead of being hit in the head, Mr. Adams was shot and killed at the location and robbed of his money.”
Three grades of battery—aggravated, second degree and simple—fit into the definition of manslaughter set forth in La. R.S. 14:31(A)(2)(a) and, without doubt, at *925 least two grades of battery—second degree and simple—fit the facts of the offense. The trial court is required to satisfy itself that the defendant understands the nature of the charges to which he is pleading and the sentence range. See La. C.Cr.P. art. 556.1(A)(1). The court is not required to review with the defendant a “ritualistic litany” of the elements of the offense nor is it required to read the defendant the equivalent of a “jury charge.” Our review of the Boykin transcript reveals that the defendant clearly knew the nature of the crimes to which he was pleading.
These claims are without merit.
FACTUAL BASIS FOR PLEA
The defendant contends that the trial court erred in accepting a plea despite “his denial of the factual basis of the charge.”
The defendant’s statement to the court was no more of a “denial of the factual basis” of the charge than his confession to the police had been. During the plea colloquy, the defendant did no more than deny that he knew that the victim would be hurt. He did not deny that (1) the victim was dead, or (2) that the victim was killed during what the defendant intended to be an |7armed robbery, or (3) that the defendant’s plan was that the victim be battered with a club to effectuate the robbery. He did not, thus, deny any of the essential elements of the crimes to which he pled guilty (manslaughter and armed robbery). The form of manslaughter to which the defendant pled involves the occurrence of an unintended death and thus, his statement that he didn’t intend for the victim to get hurt was consistent with his plea. The defendant’s statement that he “didn’t know nobody was going to get hurt” is not a denial of the elements of the offense, but a statement in mitigation of his crime, which the charges correctly reflect.
This assignment lacks merit.
ARRAIGNMENT
In four assignments of error, the defendant complains of the lack of formal arraignment and entry of a plea to armed robbery, and to the lack of formal arraignment and entry of a plea to manslaughter.
In relevant part, La.C.Cr.P. art. 555 states:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto.
Through the statements of his counsel, the court, and the defendant’s responses, it is clear that the defendant pled guilty to these two offenses and also that any alleged failure to formally arraign him was waived. These assignments of error are meritless.
VOLUNTARY WAIVER
The defendant contends that the trial court failed to obtain a voluntary waiver of constitutional rights. Specifically, he refers to an incident during the Boykin plea when the defendant’s mother interrupted and declared that |Rher son was being forced to plead guilty.[2] However, the defendant’s answers in the guilty plea colloquy indicated an intelligent understanding of his constitutional rights and a clear indication of his intention to plead *926 guilty. In particular, we note the following exchange between the trial court and the defendant, which occurred after the mother’s interruption and near the end of the colloquy:
Q: All right. Do you have any questions that you want to ask me?
A: No, sir.
Q: And do you still wish to enter this plea of guilty or these pleas of guilty at this time?
A: Yes.
This assignment of error is without merit.
UNCERTAINTY IN PLEA
The defendant claims that the trial court erred in making a “representation to defendant of an uncertainty in the sentence in exchange for his pleas.” Specifically, he claims that the trial court erred by advising the defendant of a right to appeal. As a consequence of this advisement, the defendant claims that his pleas were not knowingly and intelligently given because they were predicated on the possibility of lesser sentences than what he received.
The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. La.C.Cr.P. art. 881.2(A)(2). Where the defendant’s plea agreement is predicated on his having a right to appeal, this circuit has ^reversed the conviction, vacated the plea, and remanded for further proceedings. See State v. Rice, 26,478 (La.App.2d Cir.12/7/94), 648 So.2d 426, writ denied, 95-0431 (La.6/16/95), 655 So.2d 340, and State v. Hill, 30,182 (La.App.2d Cir.12/12/97), 704 So.2d 957. However, the First and Third Circuits, when faced with a plea agreement where the defendant reserved or was advised of his appellate rights, have chosen to review the sentence. State v. Planco, 96-812 (La.App. 3rd Cir.3/26/97), 692 So.2d 666; State v. Larrivere, 98-1399 (La.App. 3rd Cir.5/5/99), 733 So.2d 703; State v. Veillon, 98-575 (La.App. 3rd Cir.2/3/99), 737 So.2d 51, writ denied, 99-0559 (La.6/18/99), 745 So.2d 20; State v. Shipp, 98-2670 (La.App. 1st Cir.9/24/99), 754 So.2d 1068.
In the instant case, there is no indication that the right to appeal was part of the plea agreement, nor does the defendant argue that it was. In the two Second Circuit cases cited above where we reversed the convictions, the right to appeal was clearly a part of the plea agreement, not merely an advisement as it was here. The defendant only complains that he thought he might have a chance to have his sentences reviewed. However, he does not allege as error in this appeal that his sentences were excessive.[3]
Consequently, we do not find that the judge’s action in erroneously informing the defendant of his right to appeal had any effect on the voluntariness of his plea.
^INEFFECTIVE ASSISTANCE OF COUNSEL
The appellant now claims ineffective assistance by the counsel who represented him at the Boykin plea. However, the motion to withdraw the guilty plea contains no such claim, counsel at the time of the motion to withdraw did not assert such a claim, and the trial court has never ruled on it. Therefore, we find that this claim is not properly before the court.[4]
*927 CONCLUSION
The convictions and sentences of the defendant are affirmed.
AFFIRMED.

. Shortly before his death, the victim had received an insurance check for approximately $600.00 from an auto accident. Several persons saw him carrying a large amount of cash on the day he was killed.

. The defendant criticized the trial court for not questioning the mother about her declaration. However, we note that, at the outset of the plea, the trial court ascertained that the defendant was of legal age and had earned a GED. The trial court properly continued its colloquy and directed its inquiries to this adult defendant.

. Were we to review the sentences for exces-siveness, we would affirm, finding that the concurrent sentences of 50 and 40 years for the defendant being a principal to the killing of an 18-year-old, while also robbing the youth, do not shock our sense of justice.

. The evidence placed the defendant's truck at the murder scene, and the defendant's own *927 confession put him there during the commission of the crime. His shotgun was the murder weapon. The day after the victim was killed and robbed, the defendant had a large amount of cash. A prosecution witness was willing to testify that the defendant had talked about "jacking up” or robbing someone. The only evidence in this record implicating a second person as the shooter was the defendant's own self-serving statement. Faced with this considerable evidence, former counsel negotiated a plea agreement by the terms of which the defendant would one day be able to emerge from incarceration. Conviction on the charge of second degree murder upon which the state was prepared to try the defendant would have resulted in life imprisonment. The decision to suggest a plea would seem to be within the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).