425 So.2d 760 (1983)
STATE of Louisiana
v.
Marvin L. TANNER.
No. 82-K-1581.
Supreme Court of Louisiana.
January 10, 1983.
*761 Dennis R. Whalen, Baton Rouge, for relator.
William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Bob Hester, Kay Kirkpatrick, Asst. Dist. Attys., for respondent.
WATSON, Justice.
Defendant, Marvin L. Tanner, is being prosecuted for negligent homicide. The issue is whether he can enforce an agreement whereby he agreed to testify before the grand jury and also produce the testimony of an eye witness and the state reciprocally promised that the information against him would be dismissed if the grand jury returned "not a true bill". LSA-C.Cr.P. art. 444.[1]

FACTS
Tanner was driving a vehicle on July 17, 1981, which had a head on collision with another vehicle occupied by Alton L. Almand, Jr., and David R. Almand. Both the Almands died from injuries received in the accident. Defendant Tanner was charged by bill of information with two counts of negligent homicide and entered a plea of not guilty. A grand jury returned "not a true bill" on the charges. Defendant filed a motion to quash the information on the ground that the state had agreed to accept the grand jury's decision about whether to prosecute.
C.Cr.P. art. 532 states:
"A motion to quash may be based on one or more of the following grounds:
"(1) The indictment fails to charge an offense which is punishable under a valid statute.
"(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.

*762 "(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
"(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion of a sufficient bill of particulars is furnished within the delay fixed by the court.
"(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
"(6) Trial for the offense charged would constitute double jeopardy.
"(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.
"(8) The court has no jurisdiction of the offense charged.
"(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted."
Although none of the above grounds are present here, section five gives a general basis for quashing an indictment or information.[2] LSA-C.Cr.P. art. 531 provides:
"All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of `not guilty' and of `not guilty and not guilty by reason of insanity,' shall be urged by a motion to quash."
The issue was properly raised by the motion to quash.
The district attorney determines whom, when and how he shall prosecute in his district. LSA-C.Cr.P. art. 61.[3] Although a grand jury is generally regarded as an investigatory tool of the prosecutor, the district attorney is not bound by the grand jury's action. As stated in the official revision comment under LSA-C.Cr.P. art. 444, "[t]he return of `not a true bill' does not operate as an acquittal, and does not preclude a subsequent charge of the crime by an information filed by the district attorney or by an indictment returned by a subsequent grand jury." The grand jury action does not sustain a plea of "autrefois acquit".[4] Thus, defendant was not acquitted by virtue of the grand jury's no true bill.
At the hearing on defendant's motion to quash, Tanner's attorney, Dennis R. Whalen, testified that Assistant District Attorney Bob Hester suggested that, if defendant Tanner and witness, Randall Boyd Tanner, testified before the grand jury and the grand jury issued a no true bill, the bill of information would be dismissed. It was stipulated that both Marvin and Randall Boyd Tanner testified before the grand jury. A no true bill was issued, but the information was not dismissed. According to Whalen, Hester:
"... specifically said that if the grand jury no true billed that the district attorney's office would dismiss the bill of information." (Tr. 11-12)
Assistant District Attorney Hester testified that he thought a grand jury would be to the state's advantage because it would eliminate the time and expense of a trial if there were a good defense to the case. Hester admitted that Whalen could logically have concluded that the charges would be dismissed if the grand jury report was favorable. Hester said:

*763 "... I never put it in words that I promise or it will be dismissed. Nothing like that was ever said, at least not to my recollection." (Tr. 16)
Whalen testified in rebuttal:
"I wish to state categorically that he [Hester] made the statement that the charges would be dismissed if the grand jury no true billed." (Tr. 18)
The trial court denied the motion to quash. Although no reasons for the ruling were assigned, there is some indication in the questions and comments at the hearing that the trial court felt Tanner was not prejudiced by his waiver of the privilege against self-incrimination before the grand jury. A writ was granted to consider the ruling. 420 So.2d 155 (La., 1982).
Although Assistant District Attorney Hester did not remember an express promise to attorney Whalen, he admitted that Whalen's logical conclusion was that the charges would be dismissed if the grand jury brought in a no true bill. Whalen testified categorically that there was a specific statement by Hester, and Hester's denial was not unequivocal. The trial court's ruling does not appear to be based on an evaluation of credibility. The evidence establishes a commitment by Hester on behalf of the state. The state can be bound by the action of an assistant district attorney. State v. Refuge, 300 So.2d 489 (La., 1974).
Defendant Tanner waived his privilege against self-incrimination before the grand jury. An order could have been obtained ordering his testimony but, in that case, his compelled testimony could not have been used against him in a subsequent prosecution. LSA-C.Cr.P. 439.1. Testimony under such an order gives the witness immunity from use of that testimony in future prosecutions. It is significant that defendant Tanner was not offered and did not receive that statutory immunity. LSA-C.Cr.P. art. 439.1; Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). Because Tanner received no immunity, his testimony could be used at a later criminal trial to impeach him. Compare New Jersey v. Portash, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). Since Tanner did not testify under the compulsion of an order, he cannot claim use immunity. Rather, he contends that he has transactional immunity which precludes the district attorney from prosecuting him for the offense about which he testified. See the discussion at 52 Tul.L.Rev. 707.
When a district attorney or assistant district attorney makes a good faith bargain with a person accused of a crime and defendant, in reliance on that bargain, relinquishes such a fundamental right as the privilege against self-incrimination, the state cannot repudiate the bargain. State v. Hingle, 242 La. 844, 139 So.2d 205 (1962). Hingle dealt with a plea bargain but the rationale is applicable to other bargains between a defendant and a prosecutor.
"`When such promises are made by the public prosecutor, or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept.' This is particularly true where the accused, in reliance on such a pledge, has carried out his part of the agreement, and, in doing so, may have relinquished valuable fundamental rights, such as the constitutional guarantee he cannot be compelled to give evidence against himself, a trial on the merits, and the possibility of being entirely exonerated if the evidence is weak and insufficient to sustain a conviction...." 139 So.2d at 210.
Like the right to trial by jury relinquished in Hingle, the privilege against self-incrimination is a fundamental one. Compare State v. Caminita, 411 So.2d 13 (La., 1982) and State v. Hearin, 409 So.2d 577 (La., 1982) where there was no detrimental reliance by the defendant.
In the Florida case of State v. Davis, 188 So.2d 24 (Fla., 1966), the prosecutor and defendant agreed to abide by the result of a polygraph examination. The Florida Court of Appeal affirmed the trial court's quashing of the indictment on the ground that the agreement regarding the polygraph examination was binding and enforceable.
*764 "Defendant had agreed to plead guilty to manslaughter if the test was not in his favor, but the state had agreed to dismiss the case if the results indicated defendant was telling the truth. This was a pledge of public faitha promise made by state officialsand one that should not be lightly disregarded." Davis, supra, 188 So.2d at 27. "[T]he equities call for performance of the prosecutor's compact, ...." New Jersey v. Ashby, 43 N.J. 273, 204 A.2d 1 (1964).
Absent prosecution for false statements or perjury, defendant obtained complete or transactional immunity from prosecution for these negligent homicides after the favorable verdict by the grand jury.
For the foregoing reasons, the ruling of the trial court herein is reversed. The motion to quash the bill of information is granted and defendant, Marvin L. Tanner, is ordered discharged.
REVERSED AND RENDERED.
BLANCHE, J., concurs and assigns reasons.
BLANCHE, Justice (concurring).
While I agree with the result reached by the majority, I cannot subscribe to the reasoning used to reach that result. The majority opinion seems to base its conclusion on the fact that the defendant "bargained away" his fundamental right against self-incrimination in exchange for the state's agreement not to continue to press charges should the grand jury return no true bill; yet, in virtually the same breath, the majority notes that the defendant enjoys transactional immunity from prosecution for any incriminating statements made before the grand jury.
Actually, the defendant did not bargain away his right against self-incrimination. Because of the transactional immunity afforded witnesses before the grand jury by La.C.Cr.P. art. 439.1, any incriminating statements made by the defendant during his testimony could not be used against him in a subsequent prosecution for negligent homicide. Therefore, the defendant did not bargain away his right against self-incrimination. However, the defendant was placed at a disadvantage by disclosing all available defenses to the statesomething which he might not have ordinarily done.
In my opinion, this case is better decided on principles of judicial integrity, to-wit: our judicial system cannot countenance prosecutorial misconduct which puts an unwary defendant at an unfair disadvantage. We cannot allow the state to enter into a supposed bargain which causes the defendant to reveal information not otherwise available to the state in carrying its burden of proving the defendant's guilt in a criminal prosecution, only to have the state renege on the deal once it discovers chinks in the defendant's tactical armor. In my view, the majority opinion, while reaching the proper result, achieves that end through an anomaly which cannot be reconciled.
I respectfully concur.
NOTES
[1] LSA-C.Cr.P. art. 444 provides:

"A. A grand jury shall have power to act, concerning a matter, only in one of the following ways:
"(1) By returning a true bill;
"(2) By returning not a true bill; or
"(3) By pretermitting entirely the matter investigated.
"The grand jury is an accusatory body and not a censor of public morals. It shall make no report or recommendation, other than to report its action as aforesaid.
"B. At least nine members of the grand jury must concur in returning `a true bill' or `not a true bill'. A matter may be pretermitted by a vote of at least nine members of the grand jury, or as a consequence of the failure of nine of the grand jury members to agree on a finding.
"C. A grand jury may make such reports or requests as are authorized by law."
[2] State v. Francis, 345 So.2d 1120 (La., 1977) stated that the state's breach of an agreement with the defendant was not a legal ground for a motion to quash. However, there the motion was also untimely, unwritten and without merit. On rehearing, the judgment in Francis was modified on other grounds.
[3] LSA-C.Cr.P. art. 61 provides:

"Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."
[4] Autrefois acquit is defined by Black's Law Dictionary, Fifth Edition, as follows:

"Fr. formerly acquitted. The name of a plea in bar to a criminal action, stating that the defendant has been once already indicted for the same alleged offense and has been acquitted."