499 So.2d 581 (1986)
STATE of Louisiana, Respondent,
v.
Charles L. BENTLEY, Applicant.
No. 18,472-KW.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
Rehearing Denied January 15, 1987.
Writ Denied March 20, 1987.
*582 Donald L. Foret and Capitelli, Bencomo & Wicker by Christopher Brizzolara, New Orleans, for applicant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for respondent.
Before MARVIN and FRED W. JONES, Jr., JJ., and CULPEPPER, J. Ad Hoc.
MARVIN, Judge.
We granted writs to review the trial court's denial of applicant's motion to quash an indictment that charged him with 305 counts of felony theft.
The basis for the motion to quash is that 2½ years before the indictment, the applicant agreed to plead guilty to federal charges arising out of the same thefts under a federal plea bargain that he would not be prosecuted in state court.
The trial court concluded that the evidence taken on the motion to suppress did not support Bentley's contentions that there was a direct agreement between the assistant district attorney and Bentley's attorney that the state would not prosecute unless federal authorities failed to do so.
We find that while there was no formal or written agreement, the then assistant district attorney understood and verbally agreed to the bargain between the applicant and federal authorities.
Substantive due process requires that we reverse the trial court's ruling and render judgment sustaining the applicant's motion to quash.

FACTS
A warrant issued from Morehouse parish for the arrest of Bentley on April 20, 1983, after federal auditors requested him, as an officer of a local savings and loan, to produce records on April 19 for the audit. The warrant charged Bentley with felony theft under Louisiana law. After Bentley consulted with his attorney, he surrendered in New Orleans to state authorities on April 22. Bentley's attorney consulted with ADA Harvey in Morehouse parish who referred him to the federal authorities that were investigating the case.
On April 26, 1983, the US Attorney, an FBI agent, Morehouse parish and state officers, including the then district attorney, Johnny Parkerson, and ADA Harvey, met in Bastrop where it was agreed that the investigation into Bentley's crimes would be conducted and controlled by federal authority. Thereafter, the case was assigned to the supervision of assistant U.S. Attorney, Carl Stewart, now a state court district judge. Bentley's attorney then began to negotiate with Stewart.
Bentley's attorney reached an agreement with Stewart which is effectively detailed in a letter to Stewart on May 12, 1983. That letter, with Stewart's acknowledgment is reproduced here:
*583
 May 12, 1983
Carl Stewart
Assistant United States Attorney
Room 3B12, Federal Building
500 Fanning Street
Shreveport, LA 71101
 Re: Charles Bentley
Dear Mr. Stewart:
The purpose of this letter is to confirm our agreement of the last few days concerning my client Charles Bentley. Pursuant to that agreement, it is my intention to have Charles Bentley appear at the F.B.I. office in New Orleans, Louisiana to meet with Thomas Ray, the case agent in this investigation, to discuss his involvement in this matter. Mr. Bentley will answer all questions truthfully and completely concerning all transactions in question in regard to this investigation concerning his position at Bastrop Federal Savings & Loan Association. He will review all documents presented to him by Mr. Ray and explain to the best of his ability his knowledge concerning those documents.
It is my understanding that there will be no State prosecution of any offenses arising out of this investigation concerning any and all transactions by Mr. Bentley at Bastrop Federal Savings & Loan. The position of the State prosecutor is to defer any prosecution unless and until the Federal Government foregoes any prosecution in this matter whatsoever. In other words, that the State will not prosecute any violation against Charles Bentley for any and all activities that he was involved in while at Bastrop Savings & Loan unless the Federal Government refuses to prosecute any violations against him. It is my further understanding that the scope of the prosecution by the Federal Government in this matter will deal with violations of 18 U.S.C., Section 657 only and that they will be on a year by year basis up to the point where the statute of limitations prohibits a prosecution. This obviously means that there will be either six or seven counts in the eventual bill of indictment against Mr. Bentley.
This agreement specifically includes a detailed description of all the transactions and the manner in which they took place by Mr. Bentley. It does not include any statements by him concerning other individuals. It is not an agreement that he testify against any other individuals, particularly any other individuals involved in illegal gambling activities. It is understood by both parties to this agreement that Mr. Bentley will at a later date, through counsel, discuss the possibility of such testimony if the Government so desires and discussion will be the basis of possible further consideration by the Government within the limits herein prescribed. There is no commitment by the Federal Government to reduce or eliminate any charges herein listed in this agreement. This discussion and statements by Mr. Bentley to Mr. Ray will not be construed as his agreement to plead guilty to any or all of the offenses which will be filed against him. I have enclosed an acknowledgment line for your signature and I ask that you please acknowledge this letter as the truth and substance of our discussions in this matter and keep a copy for your records and please forward the original back to me.
 Sincerely,
 s/Ralph Capitelli
 RALPH CAPITELLI
RC:rmm
Enclosure
ACKNOWLEDGMENT:
I agree that this letter states the working agreement between the Federal Government and Mr. Charles Bentley.
 s/Carl E. Stewart
 A.U.S.A.
Shortly after the letter agreement was perfected, Bentley was indicted in the federal court on six specific charges and formally confessed and related how the embezzlement scheme proceeded. A written plea agreement was executed in the federal court and guilty pleas were entered on June 20, 1983. On July 18, 1983, Bentley *584 was sentenced to 25 years imprisonment. His sentence was later reduced to 15 years.
Between May 12 (the date of the letter agreement) and sometime before June 20, 1983 (the date Bentley pleaded guilty), Bentley met Parkerson at a chance meeting and mentioned the dismissal of the state charge or charges against him. Parkerson told Bentley the State had no agreement with him or anyone to dismiss any charges against him. Bentley became alarmed and contacted his attorney who in turn contacted Stewart. Stewart then contacted Harvey.
At the motion to suppress hearing in 1985, it was stipulated that Stewart would testify that shortly before Bentley pleaded guilty in federal court [on June 20, 1983], Bentley became "disturbed" that the State might be contemplating prosecuting him, which caused Stewart to confer with ADA Harvey. The stipulation of Stewart's testimony continues: "that from a conversation with ... Harvey as [ADA] in Morehouse Parish ... Stewart understood that if the... Federal government prosecuted ..., the State would not ... and that the letter [of May 12, 1983] states what [Stewart's] state of mind ... was at that time, [acknowledging] that he never had any authority to bind the State ..."
On November 15, 1983, Bentley's attorney wrote Harvey:
 November 15, 1983
Allan Harvey
P.O. Box 1079
Bastrop, Louisiana 71220
 Re: Charles Bentley
 CR-83-1792-C
Dear Mr. Harvey:
Pursuant to our recent telephone conversation, I have enclosed a copy of the acknowledgment and agreement that was executed between myself and the U.S. Attorney's Office on May 12, 1983. As you are aware, our office relied totally on the contents of this letter agreement and previous representations made to us in our representation of Charles Bentley.
If we can be of any further assistance to you please do not hesitate to contact me.
 Sincerely yours,
 s/Ralph
 RALPH CAPITELLI
On December 9, 1983, Parkerson wrote in hand on the bottom of the letter:
Send back to A. Harvey to put in the Bentley file. Looks to me like any prosecutions by us would enable Bentley to attack his plea and present sentence. This was not our agreementsee the transcript of our joint meeting.
The State did not produce the transcript of the "joint meeting," which apparently referred to the April 26, 1983, meeting between the state and federal authorities that is mentioned above.
Harvey testified that he never represented to anyone that the State would not prosecute Bentley, but admitted that he told Bentley's attorney that the State would do nothing to upset the federal plea bargain. Harvey acknowledged that Bentley's attorney could have gained from him, the understanding or impression that the State would not prosecute Bentley as long as the federal authorities "got what they wanted."
Bentley's attorney had testified that Harvey had told him that the State would not go forward with the prosecution unless the federal people failed to prosecute. Harvey testified that he did not have "total recall" of his conversation with Bentley's attorney and did not remember anything about his conversation or conversations with Stewart.
Positive or affirmative evidence is recognized as preponderant over negative evidence. See LeBlanc v. Cordaro, 378 So.2d 1027 (La.App. 2d Cir.1979) and cases cited therein. The State is bound by the action or statements of an assistant district attorney. State v. Tanner, 425 So.2d 760 (La.1983).
District Attorney Parkerson remained in office through December 31, 1984. His successor, James Norris, became District *585 Attorney on January 1, 1985. On October 16, 1985, more than ten months after assuming the office, DA Norris presented evidence to a Morehouse Grand Jury that resulted in the indictment which Bentley unsuccessfully sought to quash in the trial court.
Parkerson testified that he did not personally tell Bentley or his attorney that the State would not prosecute Bentley and that he had no knowledge of Harvey making such a statement to them. While the record is clear that Parkerson himself had not agreed to the federal plea bargain outlined in the letter of May 12, 1983, Parkerson acknowledged on cross-examination that his "basic attitude" toward the matter was that as long as the US attorney's office handled the case "properly," there would be no prosecution by the State. His handwritten note about the May 12, 1983, letter supports the conclusion that Parkerson had no express agreement with Bentley or federal authorities. His inaction during the one and one-half years remaining on his term thereafter, supports the conclusion that he did not intend to prosecute Bentley, and was obviously satisfied that the federal prosecutor had handled the case properly.
Under the totality of the circumstances, we find, however, that the State, through its assistant district attorney, verbally agreed not to prosecute Bentley if Bentley fulfilled his part of the federal bargain.
Stewart and Bentley's attorney gained the subjective understanding from conversations they separately had with Harvey between May 1 and June 20, 1983, that the State agreed not to prosecute if Bentley fulfilled to his plea bargain with the federal government. Bentley incriminated himself and pleaded guilty, relying on the verbal representations and agreement that were made by the State, through its assistant district attorney, to his lawyer and to Stewart. We find Bentley's reliance eminently reasonable.
Fundamental fairness would be offended if the state, at this late stage under the described circumstances, is allowed to indict and prosecute Bentley. State v. Neitte, 363 So.2d 425 (La.1978). When a plea rests in any significant degree on a promise by the prosecution, that promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Redfearn, 441 So.2d 200 (La.1983); State v. Cooper, 449 So.2d 1376 (La.App. 2d Cir.1984). Bentley's plea significantly rested upon the content of the letter of May 12, 1983.
The trial court acknowledged in its reasons for denying the motion to quash that the State's prosecution of Bentley would affect Bentley's conviction in the federal court. We observe that it will also affect the admissibility of inculpatory statements made by Bentley to federal authorities after May 12, 1983, in the event that Bentley is granted a new trial in federal court or prosecuted under the indictment in the State court.

DECREE
Under the described circumstances, we reverse the ruling of the trial court and render judgment granting applicant's motion to quash the indictment returned against applicant on October 18, 1985.
REVERSED AND RENDERED.