BARRY, Judge.
The defendant, Matthew Lehrmann, was indicted by the State of Louisiana on one count of public bribery of Brian Eastwold, a City of New Orleans employee. The defendant’s motion to quash the indictment, based on his immunity agreement with the U.S. Attorney’s Office, was denied and he filed this writ. On June 3, 1988 we issued a stay order and granted the U.S. Attorney’s motion to appear as amicus curiae. On June 17, 1988 we set dates for a response from the District Attorney and the amicus curiae brief.
We grant the writ, reverse the trial court, and grant the motion to quash the indictment.
FACTS
In 1987 the Orleans District Attorney undertook an investigation into possible corruption involving the City’s sales tax collections. Brian Eastwold, a Senior Revenue Field Clerk and Tax Administrator for the City, testified before the State Grand Jury in August, 1987 and was told he was a target of the investigation. He also testified before the New Orleans City Council in February or March, 1988. At that time the D.A.’s investigation did not include Matthew Lehrmann or his restaurant/bar, the Home Plate Inn. On April 28 and 29, 1988 Assistant D.A. Bane testified at Lehrmann’s motion to quash hearing that her office was not aware of Lehrmann’s existence prior to April 5, 1988.
As part of a parallel investigation by the U.S. Attorney’s Office, Lehrmann testified before the Federal Grand Jury and on March 24, 1988 he signed an agreement to provide information to the federal authorities which provides in pertinent part:
Matthew Lehrmann, Jr. agrees to meet with law enforcement officers and give a complete and truthful statement concern *804 ing matters about which he is asked. He also agrees to assist, in any way the Government sees fit federal and possibly state authorities in initiating cases against persons he knows of or has knowledge of who are violating criminal laws. He also agrees to initiate cases against person [sic] he learns are violating criminal law while he is cooperating with law enforcement authorities. This could mean the consensual recording of conversations through the use of electronic recording devices.
Further, Matthew Lehrmann, Jr. agrees to appear before any grand jury and at any trial and testify completely and truthfully against any persons about whom he has information regarding violations of any criminal statutes.
The Government reserves the right to verify by any means it sees fit any statements or testimony given by Matthew Lehrmann, Jr. The Government further agrees that anything he says or any statements or testimony he gives regarding illegal transactions in the Eastern District of Louisiana, pursuant to questions asked by law enforcement authorities and as a result of and after the execution of this agreement will not be used against him in any trial or in connection with any sentencing.
Lehrmann told federal agents he agreed to pay Eastwold to reduce the sales tax owed by Lehmann's Home Plate Inn. Lehmann was scheduled to testify again before the Federal Grand Jury on April 8, 1988.
On March 25, 1988, in a consensually recorded phone conversation pursuant to Lehmann’s immunity agreement, East-wold urged Lehmann to protect him (East-wold) and not testify that Eastwold had prepared the sales tax return. An excerpt of the conversation (attached to the federal complaint) shows:
OWNER [Lehmann]:
So what do I tell them when they ask me who completed all the foms and all? ... You know it’s not my handwriting ...
[[Image here]]
EASTWOLD:
... Maybe you can just say a bartender did it for you ...
OWNER:
But then I know they gonna start asking, you know, you know, if I paid anybody to help me or anything like that. EASTWOLD:
Yeah well that’s that’s a no no strickly [sic].
OWNER:
Yeah, I know. I don’t want to say anything about that.
EASTWOLD:
Yeah know I mean if if you gotta admit you know that you know if you gotta admit to anything, don’t ever do that.
OWNER:
Yeah, well you know.
EASTWOLD:
Cause, cause, that’s criminal and that ah
[[Image here]]
As a result of that incriminating conversation, Eastwold signed an immunity agreement with the U.S. Attorney’s office on March 25,1988. Subsequently he violated its terns by telling a superior at City Hall about the agreement and federal authorities advised him that he would be charged. Eastwold’s attorney, Clyde Martin, testified that he requested a delay because he was leaving town and promised to contact the U.S. Attorney’s Office on April 4, 1988. On April 4 at about 9:00 a.m. Assistant D.A. Bane called Mr. Martin. She testified the call was a follow up on another taxpayer’s investigation and anything else involving Eastwold.
Mr. Martin testified he told Ms. Bane that he had to call Ms. Mann, Assistant U.S. Attorney, to make ah appointment. Mr. Martin and Ms. Mann made an appointment for Tuesday, April 5, 1988 and Ms. Mann disclaimed any plan to arrest East-wold. Mr. Martin told Ms. Mann that would allow Eastwold to see Ms. Bane that Monday afternoon. While Mr. Martin was talking to Ms. Bane, Ms. Mann called on another line and said she had to speak to Mr. Martin immediately. Ms. Bane held while Ms. Mann informed Mr. Martin that *805 U.S. Attorney John Volz decided to immediately arrest Eastwold. Mr. Martin prevailed on Ms. Mann to delay the arrest and he agreed to surrender Eastwold. Mr. Martin reconnected to Ms. Bane and she askéd him to stop by her office with East-wold on their way to the U.S. Attorney’s office.
According to Mr. Martin, he and East-wold met with D.A. Harry Connick, Ms. Bane and others and provided information concerning the relationship between East-wold and Lehrmann. Ms. Bane testified that Eastwold agreed to cooperate in the D.A.’s investigation. Mr. Martin then surrendered Eastwold to federal authorities, obtained a copy of the federal complaint, and had him released on bond.
The next day, April 5, 1988, Mr. Martin and Eastwold returned to Ms. Bane’s office. Mr. Martin testified he decided it was in Eastwold’s best interest to make an agreement for state immunity since East-wold had exposure in this investigation and other State cases. Although Mr. Martin asked for full immunity, the District Attorney agreed to file only one felony count for malfeasance in office. Eastwold discussed six businesses’ tax collections, including Lehrmann’s Home Plate Inn. Eastwold detailed his federal immunity agreement, his violation of it, and the resultant federal complaint. Significantly, Mr. Martin gave Ms. Bane a copy of Eastwold’s federal complaint. Eastwold identified the “Owner” in the taped phone conversation (attached to the complaint) as Lehrmann, owner of the Home Plate Inn.
On Wednesday, April 6, 1988 Eastwold testified before the Orleans Parish Grand Jury and Lehrmann was indicted for public bribery. Pursuant to his immunity agreement Eastwold was indicted on one count of malfeasance in office. According to Ms. Bane, her office found out about Lehrm-ann’s federal immunity agreement April 7, 1988. On April 8, 1988 Lehrmann testified before the Federal Grand Jury and East-wold was indicted for mail fraud, extortion, and obstruction of justice. Lehrmann was placed in the federal diversionary program.
Lehrmann’s motion to quash the state indictment is based on a violation of his Fifth Amendment protection because the evidence presented to the State Grand Jury was derived from information covered by his federal immunity. The trial court reviewed in camera Eastwold’s April 6, 1988 grand jury testimony and found no mention of Lehrmann’s federal immunity agreement. The court denied the motion and issued the following reasons for judgment:
The Court has found that there has been no evidence of bad faith on the part of the District Attorney for the Parish of Orleans or the United States Attorney for the Eastern District of Louisiana in their handling of all matters involving Mr. Matthew Lehrmann. The Court further finds that there is no evidence that the District Attorney for the Parish of Orleans in any way relied upon any information that may have been obtained by the United States Attorney after a grant of immunity that was given by the United States Attorney to Mr. Lehrmann. The Court finds that there is total attenuation between the actions of the United States Attorney for the Eastern District of Louisiana in its dealings with Mr. Lehrmann and the investigation by the Orleans Parish Grand Jury and the District Attorney for the Parish of Orleans.
THE LAW
The power to compel testimony is not absolute. The most important exemption is the Fifth Amendment privilege against compulsory self-incrimination which protects against any disclosures the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be used. Immunity statutes seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).
Two basic types of immunity are employed to protect a witness’ privilege against self-incrimination. Transactional immunity precludes all prosecution relating *806 to the subject matter of the compelled testimony. “Use plus derivative use” immunity allows future prosecution of the witness compelled to testify, but prohibits introduction or use of that testimony in those prosecutions. Determination of what constitutes indirect use of compelled testimony is difficult. Also problematic is the possible use of testimony or evidence compelled by one jurisdiction in another jurisdiction in its prosecution relating to the same subject matter. Comment, Constitutional Considerations of Federal and State Testimonial Immunity Legislation, 36 LA.L.REV. 214 (1975). See also Comment, Selected Problems of the Louisiana Grand Jury, 52 TUL.L.REV. 707 (1978).
The U.S. Supreme Court considered those problems in Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609-10, 12 L.Ed. 2d 678 (1964), and held:
[A] state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity.
The prohibition against use of compelled testimony includes its utilization as an investigatory lead and “use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.” Kastigar, 406 U.S. at 460, 92 S.Ct. at 1665. Once a defendant demonstrates that he has testified under a grant of immunity by the state to matters related to the federal investigation (or vice, versa), the federal authorities must carry the burden “of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.” Murphy, 378 U.S. at 79, 84 S.Ct. at 1609, Fn. 18.
The burden of proof is not limited to a negation of taint, but imposes an affirmative duty upon the prosecution to prove that the evidence to be used is derived from “a legitimate source wholly independent of the compelled testimony.” Kastigar, 406 U.S. at 460, 92 S.Ct. at 1665. The government is required to demonstrate by a preponderance of the evidence the independent source. United States v. Seiffert, 501 F.2d 974 (5th Cir.1974). Mere denials of use by prosecutors and government agents are generally insufficient to meet the burden even if made in good faith. United States v. Hampton, 775 F.2d 1479 (11th Cir.1985); United States v. Byrd, 765 F.2d 1524 (11th Cir.1985).
A person granted use immunity and subsequently prosecuted is not dependent upon the integrity and good faith of the prosecution for the preservation of his rights. Kastigar, supra. Attenuation of the taint of evidence determinative in Fourth Amendment cases is not the test in a Fifth Amendment case. The function of the Fourth Amendment exclusionary rule is the deterrence of unlawful police conduct.
The Fifth Amendment, in contrast, is by its terms an exclusionary rule, and as implemented in the immunity statute it is a very broad one prohibiting the use not only of evidence, but of ‘information’, ‘directly or indirectly derived’ from the immunized testimony. The statute requires not merely that evidence be excluded when such exclusion would deter wrongful police or prosecution conduct, but that the witness be left ‘in substantially the same position as if [he] had claimed the Fifth Amendment privilege.’ Kastigar v. United States, supra, 406 U.S. at 462, 92 S.Ct. at 1666, 32 L.Ed.2d at 227; Murphy v. Waterfront Commission, supra, 378 U.S. at 79, 84 S.Ct. at *807 1609, 12 L.Ed.2d at 695. (footnote omitted)
United States v. Kurzer, 534 F.2d 511, 516 (2d Cir.1976).
Federal jurisprudence has upheld informal grants of immunity as well as formal grants of testimonial immunity under 18 U.S.C. §§ 6001-6005[1] on equitable grounds. It must be determined whether there was a promise held out to which the government might be bound as a matter of fair conduct. United States v. Weiss, 599 F.2d 730 (5th Cir.1979); United States v. Calimano, 576 F.2d 637 (5th Cir.1978).
The federal government has been required to honor such an agreement when it appears that:
(1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government.
Rowe v. Griffin, 676 F.2d 524, 527-28 (11th Cir.1982), relying for analogous precedent on opinions involving plea bargain agreements, e.g., Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). See also United States v. Carpenter, 611 F.Supp. 768 (N.D.Ga.1985); United States v. Sanderson, 498 F.Supp. 273 (M.D.Fla.1980), and cases cited therein.
Louisiana jurisprudence similarly upholds informal grants of immunity, in addition to formal grants under La.C.Cr.P. Art. 439.1.[2] When a district attorney or assistant district attorney makes a good faith bargain with an accused and that person relies upon that bargain and relinquishes such a fundamental right as the privilege against self-incrimination, the State cannot repudiate the bargain. State v. Tanner, 425 So.2d 760 (La.1983); State v. Hingle, 242 La. 844, 139 So.2d 205 (1961).
ANALYSIS
In this matter the federal authorities entered into an agreement with Lehrm-ann that “anything he says or any statements or testimony he gives ... will not be used against him in any trial or in connection with any sentencing.” Pursuant to that agreement Lehrmann gave incriminating information about his payments to Eastwold in exchange for Eastwold’s help to falsify his sales tax returns. Lehrmann also consented to recording his telephone conversation which was used to indict East-wold. Part of the transcript was attached to the federal complaint that Mr. Martin gave to Ms. Bane. Ultimately Lehrmann testified against Eastwold before the Federal Grand Jury.
There is no question that Lehrmann gave information to federal authorities pursuant to a use immunity agreement, even though he did not testify before the Federal Grand Jury until two days after his State indictment. Lehrmann relied upon his federal immunity and relinquished his privilege against self-incrimination. That agreement is valid and binding. See State v. Tanner, supra; Rowe v. Griffin, supra.
Because the federal agreement was only for use immunity, the State can prosecute Lehrmann if it can show its evidence was derived from a legitimate source wholly independent of Lehrmann’s compelled federal testimony. Ms. Bane testified that she utilized only the information provided by Eastwold on April 4 and 5, 1988 and Lehrmann’s indictment was based solely on Eastwold’s grand jury testimony and documentation about six businesses which were involved in the tax scheme.
*808 Ms. Bane disclaimed any reference to the federal complaint when questioning East-wold, but admitted she may have mentioned its existence and brought it into the jury room. She said she never received any federal investigative reports, transcripts or recorded conversations, and did not know of Lehrmann’s purported federal immunity agreement until April 7, 1988 (after the state indictment).
Ms. Bane acknowledged possession of the federal complaint against Lehrmann. She did not discount Eastwold’s sudden cooperation with the District Attorney’s Office resulted from Lehrmann’s federal testimony and Eastwold’s resultant federal indictment. Eastwold’s attorney, Clyde Martin, testified that his client’s cooperation with the District Attorney’s Office was prompted by his awareness of Eastwold’s federal arrest and his knowledge that in State court Eastwold “had exposure in this case and in several other cases and it was in his best interest to make and [sic] agreement along those lines.”
A similar situation was considered in United States v. Kurzer, supra, where a claim was made that the witness’ testimony was derived from prior immunized testimony because the witness was led to cooperate by an indictment secured through the immunized testimony. In the course of a federal-state investigation of the New York meat industry, Harry Kurzer, an accountant for several meat companies controlled by Moe Steinman (a target of the investigation), testified before the Federal Grand Jury under a formal grant of immunity. Two federal indictments against Steinman resulted and Steinman would not cooperate. Later, when the joint investigation discovered other schemes pursuant to other witnesses’ testimony which were wholly independent of Kurzer’s testimony, Steinman gave information in exchange for being allowed to plead to one federal count and one state misdemeanor charge. That independent information was used to indict Kurzer with aiding and abetting the filing of fraudulent federal corporate tax returns.
Kurzer’s motion to dismiss the indictment as a product of his immunized testimony under Kastigar, supra, was granted and the government appealed. None of Kurzer’s immunized testimony or information was used to obtain his indictment since it was not relevant to the later charge against him. The focus was on whether Kurzer’s indictment was the result of his immunized testimony.
The U.S. Second Circuit found the trial court erred by ruling that Steinman’s subjective motivation in testifying against Kurzer was irrelevant to the factual dispute. The appellate court concluded that the only way Steinman’s testimony could be derived from Kurzer’s testimony was if his information contributed to Steinman’s decision to testify. The Second Circuit held that Steinman’s motivation was highly relevant and remanded because that issue had been excluded by the trial court. After an evidentiary hearing the District Court found the government had not met its burden and dismissed the indictment against Kurzer. 442 F.Supp. 487 (S.D.N.Y.1976).
The information Lehrmann gave to the federal authorities related to the same sales tax investigation being conducted by the D.A.’s office. An incriminating part of Lehrmann’s conversation with Eastwold was attached to Eastwold’s federal complaint which was given to Assistant D.A. Bane by Mr. Martin. At that time the State’s investigation did not include Lehrm-ann. The District Attorney’s office did not know of Lehrmann’s involvement until April 5, 1988 after Eastwold cooperated as part of a State immunity agreement (perfected after Eastwold violated his federal agreement) relating to the same investigation. During a lengthy investigation and appearance before the Orleans Parish Grand Jury and City Council, Eastwold never mentioned Lehrmann until Lehrmann recorded their conversation and provided federal authorities with information to indict Eastwold. Only then did Eastwold testify against Lehrmann. It is clear that Lehrmann’s federal cooperation was the reason Eastwold testified against Lehrm-ann. According to Mr. Martin, Eastwold’s attorney, he sought a bargain with the State because of his federal problems and exposure in state court.
*809 Under these circumstances we conclude that the District Attorney’s Office failed to carry its burden of showing that its evidence against Lehrmann was derived from a legitimate source wholly independent of the information Lehrmann gave to the federal authorities. Lehrmann was indicted in state court because he provided information against Eastwold to federal authorities.
The trial court’s finding of no bad faith by the District Attorney’s office is irrelevant in the determination of whether to uphold a use immunity agreement. Kastigar, supra. The trial court’s finding of attenuation between the actions of the U.S. Attorney’s office and the District Attorney’s office, relevant to a Fourth Amendment exclusionary problem, is not determinative of whether to prohibit the use of evidence obtained in violation of the Fifth Amendment. The issue was properly raised by a motion to quash. See State v. Tanner, supra.
The trial court erred, its judgment is reversed, and the motion to quash is granted.
REVERSED.

. 18 U.S.C. § 6002 provides in pertinent part:
[N]o testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case....

. La.C.Cr.P. Art. 439.1 C provides:
The witness may not refuse to comply with the order on the basis of his privilege against self incrimination, but no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for peijury, giving a false statement or otherwise failing to comply with the order.