RSCHOTT, Chief Judge.
This is an appeal by the State of Louisiana from a judgment quashing the bill of information which charged defendant with oral sexual battery and molestation of his two year old son. The principal issue is whether defendant is legally entitled to enforce a verbal agreement made between his attorney (defense counsel) and an assistant district attorney (ADA) that the charges against him would be dropped if he would take a polygraph test and passed the test.
Defense counsel testified that the ADA in charge of screening sex offender eases agreed with him not to accept the charges against defendant if he passed a polygraph test and she gave him the name of a major in the St. Bernard Parish Sheriffs office who could perform the test. Defendant took the test and passed, but the ADA accepted the charges.
The ADA denied making this agreement with defense counsel. She said she had no authority to do so under her office policy and would need the permission of her superiors to make such an agreement.
The trial judge was confronted with a classic case of conflicting testimony between two witnesses. As she put it during the hearing, “-the Court is here weighing the credibility of both of them .... it’s a question of credibility, or a call in that area.”
In the allocation of judicial responsibility it is the function of the trial court to determine the credibility of witnesses and to resolve conflicts in the testimony of opposing witnesses. When the court of appeal considers this kind of a judgment it may not substitute its own judgment for the trial court’s. Consequently, we are (¡constrained to accept defense counsel’s version of his contact with the ADA and to conclude that the ADA made the agreement that the charges would not be accepted if defendant passed the polygraph test.
The State argues that the ADA was without authority to make this agreement, it was unreasonable for defense counsel to rely on the ADA’s representations, because the agreement was not in writing it was not enforceable, and defendant was not prejudiced by relying on the agreement.
In State v. Tanner, 425 So.2d 760 (La.1983), the defendant was charged by bill of information in connection with a death arising from an automobile accident. The A.D.A. in charge of the case told the defendant that if he and his witness testified before the grand jury and the grand jury chose not to indict him, the bill of information filed against him would be nolle prosequied. The defendant and his witnesses agreed and testified before the grand jury, which returned a no true bill. However, the A.D.A. refused to nolle prosequi the case, and the defendant moved to quash the bill. On review of the *1157 trial court’s refusal to quash the charge, the Court found that the A.D.A.’s promise to the defendant to drop the charges, in exchange for his testimony before the grand jury, bound the district attorney’s office to the A.D.A.’s promise not to prosecute the defendant once the grand jury returned a no true bill. The Court noted: “When a district attorney or assistant district attorney makes a good faith bargain with a person accused of a crime and defendant, in reliance on that bargain, relinquishes such a fundamental right as the ^privilege against self-inerimination, the State cannot repudiate the bargain.” Id. at 763.
In State v. Bentley, 499 So.2d 581 (La.App. 2 Cir.1986), writ den. 503 So.2d 477 (1987), the defendant was arrested on state charges, and an A.D.A. directed the defendant to federal authorities, promising that if the defendant was charged in federal court and agreed to give information about other suspects, state charges would not be filed. The defendant complied with the agreement and subsequently pled guilty to federal charges. A new district attorney, who had not been in office when the agreement was made, indicted the defendant. On review, the court held that the State was bound by the agreement reached with the former A.D.A., even though the agreement was not in writing. Finding that prosecution of the defendant would violate fundamental fairness, the court quashed the indictment.
These cases make clear that an A.D.A. has the authority to make a binding agreement on behalf of the State, and such an agreement need not be reduced to writing. See also State v. Cinel, 619 So.2d 770 (La.App. 4 Cir.1993), writ den. 629 So.2d 369 (La.1993), cert. den. Cinel v. Louisiana, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994).
The State’s final argument is that the alleged agreement is not enforceable because the defendant did not rely on the agreement to his detriment by waiving important constitutional rights. Specifically, the State asserts that the results of the polygraph test are not admissible against the defendant. Second, it asserts that feeven if the defendant had made an inculpatory statement, any alleged prejudice could be cured by suppressing the statement.
Importantly, the type of agreement at issue here is one of transactional immunity; the State agreed to refuse charges if the defendant passed a polygraph test. See State v. Tanner, 425 So.2d at 763. Also, the fact that the results of the test were exculpatory does not appear to be a consideration in determining whether the agreement should be enforced. It would, however, have a bearing on the extent of the immunity offered by the State. See State v. Cinel, 619 So.2d at 777.
When defendant submitted to questioning by the polygraph operator, who in this ease was a police officer from St. Bernard Parish, he relinquished his right to remain silent and to refuse to answer any questions about the offense with which he has been charged. The relinquishing of such a fundamental constitutional right is inherently detrimental. This is so whether or not his answers were inculpatory or could be used against him.
On cross examination by the State at the hearing on the motion to quash, defense counsel was asked whether it was not so that the contents of the polygraph examination were exculpatory - the implication being that since they were exculpatory defendant suffered no detriment by taking the test. Defense counsel testified that within a few. days after his client gave his statement to the polygraph operator, who was a Major in the St. Bernard Sheriffs Office, the ADA contacted that office and they issued a warrant for his arrest. His testimony continued as follows:
fc“So, whether it was exculpatory or not, she caused him to be arrested in St. Bernard Parish, after my client gave a statement to a Major who is in charge of self-incrimination, he gave up his right to remain silent, based on the representation that she told me in agreement.”
To allow the State to renege on the agreement it made in this case would be fundamentally unfair to the defendant and his attorney who were entitled to rely on the ADA’s promise. That was the basis for the *1158 decision in the Bentley case and for Justice Blanche’s concurrence in the Tanner case.
Accordingly, the judgment appealed from is affirmed.

AFFIRMED.