u STEWART, Judge.
The defendant, John Meredith, faces prosecution for vehicular homicide and D.W.I., third offense. He filed a motion to quash, alleging an agreement between his original defense counsel and the district attorney whereby if the defendant testified before the grand jury and the grand jury returned a no true bill, then the state would not prosecute. The trial court found that such an agreement had been made and granted the motion to quash. The state now appeals. We affirm.
FACTS
On September 1, 1995, the defendant was involved in a motor vehicle accident in Caldwell Parish. The defendant’s passenger, John Dilly, was killed. On January 12, 1996, the matter was presented to the grand jury. According to Mark Lee Talley, the defendant’s counsel when the matter was first presented before the grand jury, an agreement was reached with the district attorney, Don C. Burns, whereby there would be no further prosecution if the grand jury returned a no true bill, provided the defendant waived his privilege against self-incrimination, waived immunity, and testified before the grand jury.
Prior to testifying before the grand jury, the defendant signed a “Waiver of Rights and Immunity” form filled out by the district attorney. In this form, the defendant acknowledged that he was waiving any express or implied immunity and his right to remain silent. The defendant also acknowledged that he understood that his testimony could be used against him. On January 12, 1996, the grand jury returned a no true bill.
From the record, it appears that no further action was taken against the defendant until an arrest warrant was issued for him on September 9, 1998. 12Puring the interim, Talley began working as an assistant district attorney in Grant Parish, and a new district attorney took charge in Caldwell Parish. When the defendant’s prosecution recommenced, the district attorney of Caldwell Parish was recused on a motion of the state, and the attorney general’s office proceeded with the prosecution.
In apparent contravention of the previous agreement, the matter was again presented to a grand jury on September 2, 1998. The defendant did not testify before this grand jury. The grand jury returned a true bill for vehicular homicide. On June 14, 1999, the state also filed a bill of information charging the defendant with vehicular homicide and D.W.I., third offense.[1]
On September 15, 1999, the defendant filed a second motion to quash the grand jury indictment and bill of information. The motion was based on the alleged agreement reached at the time of the first grand jury between the defendant’s initial counsel, Talley, and the district attorney. This agreement provided, as mentioned previously, that if the defendant testified before the grand jury and it returned a no true bill, then the case would not be prosecuted. The motion further alleged that the defendant did testify before the grand jury and that a no true bill was returned. The motion went on to allege that, in contravention of the agreement, the state *112 obtained an indictment under a different grand jury.
| a A hearing on the motion to quash took place on December 5, 1999. Talley testified that the agreement alleged by the defendant had been made. Talley also testified that it was commonplace for him to make agreements with Bums, the district attorney, and that such agreements would not be reduced to writing. Talley specifically recalled discussing the grand jury hearing with Burns. He also specifically recalled the terms of the agreement reached with Burns regarding the defendant’s participation in the grand jury hearing. He testified that if the defendant testified before the grand jury and a no true bill was returned, then the “proceedings ended there. That Mr. Meredith would no longer be a target for prosecution. The matter was over.”
Burns was offered as a witness on behalf of the state. He did not recall making any such agreement. He did recall having one or more conversations with Talley and that the defendant had elected to testify before the grand jury. Burns also testified that the waiver signed by the defendant before the grand jury was standard procedure. Burns thought that any agreement would have been memorialized in the file, but nothing was found. However, he admitted that it was customary for him to make verbal agreements as to various matters such as plea bargains.
In a written ruling dated January 10, 2001, the trial court sustained the motion to quash. The trial court found the following:
Mr. Talley was called to testify and he vividly recalled the conversation that he had with Mr. Burns as it relates to the agreement to testify before the grand jury by the defendant, John Meredith. Mr. Burns was called to testify and basically said that he did not grant immunity to testify, but he does not recall with specificity the entire agreement, but did admit that he made various agreements with various defense counsel concerning persons charged with crimes. Since the burden of proof is by a preponderance of the evidence or more probable than not, the Court is inclined to agree with the | ¿testimony of Mr. Talley since he has a specific recollection of that particular case, since it was his particular client which was the subject of the agreement or conversation.
The trial court further noted that Burns had dealt with thousands of defendants while serving as a district attorney and that it would not be unusual for him to not recall a particular case.
This appeal by the state followed.
DISCUSSION
In its assignment of error, the state alleges that the trial court abused its discretion in failing to consider the waiver of rights form signed by the defendant before the original grand jury and in finding that the defendant had met his burden of proof in granting the motion to quash. While the state concedes that the defendant is entitled to have the indictment quashed if he made the alleged agreement, the state does not concede that such an agreement existed. The gist of the state’s argument is that even if the defendant had an agreement with the district attorney, his signing of the waiver of immunity and rights form immediately prior to his testimony before the grand jury invalidated any such agreement. By signing the waiver prior to his testimony, the defendant waived “any express or implied immunity” as stated in the waiver, including transactional immunity which he would have been entitled to by virtue of the alleged agreement. The state argues that the trial court ignored the waiver signed by the defendant when it *113 determined that the defendant met the burden of proving that the agreement was made.
The main issue before us is whether the trial court abused its discretion in finding that in 1996, there was an agreement between the |sdefense counsel and the district attorney that the defendant would not be prosecuted if he waived immunity and his privilege against self-incrimination and testified before a grand jury, provided the grand jury returned a no true bill.
The standard of review is well-established. It is the function of the trier of fact, not the appellate court, to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). The trier of fact hears first hand the testimony and unless the fact finder’s assessment of believability is without any rational basis, it should not be disturbed by a reviewing court. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). Whether an agreement as alleged by the defendant was made must be proven by a preponderance of the evidence. State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, 1149.
The trial court chose to accept the testimony of Talley, the defendant’s former counsel, that the agreement had been made. This finding was based on Talley’s specific recall of his conversations with Burns and the details of the agreement. In accepting Talley’s testimony as believable, the trial court did not discredit the testimony of Burns, the former district attorney, but rationally noted that Burns had handled thousands of eases, many of which involved some sort of agreement with defense counsel. The finding of the trial court that the agreement existed has a rational basis in the evidence and will not be disturbed on appeal.
IfiOur next inquiry is whether the agreement was valid. Both the state and the defendant agree that the applicable law is found in State v. Tanner, 425 So.2d 760 (La.1983), which involved almost identical factual and legal issues. Tanner was charged with negligent homicide stemming from a vehicular collision. His counsel and the prosecutor reached an agreement to have Tanner testify before a grand jury. If the grand jury returned a no true bill, then Tanner would not be prosecuted. Tanner testified before the grand jury, and it returned a no true bill. However, the state continued the prosecution. Tanner filed a motion to quash which the trial court denied. Writ was granted to review the decision. Thereafter, the Louisiana Supreme Court reversed, holding that, as per the agreement, the defendant obtained complete or transactional immunity from prosecution, absent prosecution for false statements or perjury stemming from his grand jury testimony. The court stated:
When a district attorney or assistant district attorney makes a good faith bargain with a person accused of a crime and defendant, in reliance on that bargain, relinquishes such a fundamental right as the privilege against self-incrimination, the state cannot repudiate the bargain. State v. Hingle, 242 La. 844, 139 So.2d 205 (1962). Hingle dealt with a plea bargain but the rationale is applicable to other bargains between a defendant and a prosecutor.
State v. Tanner, supra, at 763.
Agreements to dismiss prosecution are binding constitutional contracts, and the validity is determined by analogy to our law of contracts. State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144. In *114 light of Tanner, there was nothing improper about the agreement between the defendant and the state in this instance.
|7The next inquiry is whether the waiver signed by the defendant abrogated the agreement. We must also determine whether the trial court disregarded the waiver when it reached its decision. The waiver is a pre-printed form which was prepared by the district attorney and signed by the defendant. By signing the waiver, the defendant waived his right against self-incrimination and all immunity. The state argues that by signing the waiver, the defendant waived any transactional immunity to which he would have been entitled because of the agreement with the district attorney and undid the prior oral agreement with the district attorney.
We find no merit in the state’s argument. First, a careful reading of the transcript of the hearing on the motion to quash shows that the waiver was admitted into evidence and that the state ‘fully addressed the waiver issue at the hearing. The state questioned Burns about the circumstances surrounding the signing of the waiver form. Moreover, the state argued the waiver issue in closing. It is evident that the trial court was fully aware of the waiver form and the issues pertaining to it. Thus, it cannot be said that the trial court disregarded the waiver in reaching its decision.
Second, the existence of the signed waiver form does not distinguish this case from State v. Tanner, supra, in any meaningful way. The key point in both Tanner and the instant case is that both defendants agreed to waive constitutional rights based on their reliance on an agreement with the district attorney. In both cases, the defendants exposed themselves to possible use of their testimony if the grand jury returned a true bill and the district attorney chose to prosecute. The agreement made by the defendant, Meredith, was with the district attorney, not the grand jury. In non-capital |scases, the action of the grand jury has nothing to do with the power of the district attorney to prosecute.[2] As stated in Tanner, supra at 762:
The district attorney determines whom, when and how he shall prosecute in his district. La.C.Cr.P. art. 61. Although a grand jury is generally regarded as an investigatory tool of the prosecutor, the district attorney is not bound by the grand jury’s action. As stated in the official revision comment under La. C.Cr.P. art. 444, “[t]he return of ‘not a true bill’ does not operate as an acquittal, and does not preclude a subsequent charge of the crime by an information filed by the district attorney or by an indictment returned by a subsequent grand jury.” The grand jury does not sustain a plea of “autrefois acquit”. Thus, defendant was not acquitted by virtue of the grand jury’s no true bill.
(Footnotes omitted.)
The district attorney has the constitutional authority to decide whether any case should be prosecuted. La. Const, art. 5, § 26. This authority includes deciding what cases to present to the grand jury. La.C.Cr.P. art. 442. A district attorney can choose to prosecute even after the grand jury returns a no true bill. Conversely, the district attorney can refuse to prosecute when the grand jury returns a true bill. Through his agreement with the district attorney, the defendant obtained complete immunity from prosecution after *115 he testified to the grand jury, not before. Thus, the fact that he signed the waiver before testifying in front of the grand jury does not conflict with the prior agreement not to prosecute, since the district attorney could stop prosecution of the case regardless of the waiver and regardless of the grand jury’s action.
It is significant that the state provided no testimony indicating that the waiver was intended to abrogate the prior agreement. Moreover, had the [ agrand jury returned a true bill in the first instance, then the waiver of immunity and the privilege against self-incrimination would have allowed the use of the defendant’s testimony against him at a later criminal trial. Through his reliance on the agreement with the district attorney, the defendant took this risk by testifying before the grand jury. Viewed in this manner, the waiver in no way conflicts with the agreement not to prosecute. Notions of fair play and the integrity of the judicial system demand that we recognize and uphold the agreement in this instance.
Our finding that the waiver had no effect on the agreement between the defendant and the district attorney is further underscored by the fact that the case sat for over two years after the grand jury returned a no true bill before prosecution began anew. No explanation was provided by the state as to why the prosecution apparently stopped for over two years if the waiver allowed prosecution to continue even though the grand jury returned a no true bill. The delay is important because an accused has a constitutional right to a speedy trial. The purpose of this right is to prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time. State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284; State v. Barley, 29,482 (La.App.2d Cir.6/18/97), 698 So.2d 36. We make this point simply to show it as an additional consideration for finding that the waiver in no way abrogated the agreement not to prosecute.
CONCLUSION
For the foregoing reasons, the ruling of the trial court granting the motion to quash is affirmed. The trial court did not abuse its discretion in |infinding a valid agreement not to prosecute the defendant for offenses arising from the accident of September 1,1995.
AFFIRMED.

. The defendant first filed a motion to quash the indictment and bill of information alleging that the prosecution for both offenses constituted double jeopardy and that the two prior guilty pleas used as predicates for the D.W.I., third offense charge were constitutionally defective. This motion was denied by the trial court, and writs were denied by this court and the Louisiana Supreme Court.

. All offenses punishable by death or life imprisonment "shall be instituted by indictment by a grand jury.” La.C.Cr.P. art. 383.